IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>CYTEK BIOSCIENCES INC., et al.,<br><br>    Defendants. | Case No. 18-cv-00933-MMC<br><br>**ORDER GRANTING DEFENDANT CYTEK'S MOTION TO DISMISS; GRANTING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS; AFFORDING LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 23, 24 |

Before the Court are the following two motions, both filed March 9, 2018: (1) defendant Cytek Biosciences Inc.'s ("Cytek") Motion to Dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) defendants Ming Yan ("Yan"), Alfred Riley ("Riley"), David Vrane ("Vrane"), Zhenyu Zhang, erroneously sued herein as Stephen Zhang ("Zhang"), Zhenxiang Gong ("Gong"), Alex Zhong ("Zhong"), Maria Jaimes ("Jaimes"), Gil Reinin ("Reinin"), and Janelle Shook's ("Shook") (collectively, "Individual Defendants") Motion to Dismiss and Joinder in Cytek's Motion to Dismiss, likewise brought pursuant to Rule 12(b)(6). Plaintiff Becton, Dickson and Company ("Becton") has filed a "Combined Opposition" to the above-referenced motions, to which Cytek and the Individual Defendants have separately replied. The Court, having read and considered the papers filed in support of and in opposition to the motions, rules as follows.

//

//

# BACKGROUND[1]

Becton is a "medical technology company" that "manufactures and sells a broad range of medical supplies, devices, laboratory equipment, and diagnostic products" (see Compl. ¶ 8), including flow cytometers (see id. ¶ 36).[2] The Individual Defendants are former Becton employees, all of whom worked on "flow cytometry development projects" at Becton (see id. ¶ 56), and, with the exception of Reinin, "downloaded" files from Becton (see id. ¶¶ 77-112) before their departures from the company, which departures took place between January 2015 and October 2016 (see id. ¶¶ 11-28). After their departures, the Individual Defendants began working at Cytek, a "company providing service, upgrades, and technical support to flow cytometers developed by other companies, including [Becton]." (See id. ¶ 130).

"Before approximately March 2017, Cytek . . . did not produce or sell any of its own cytometers." (See id. ¶ 132.) "On or about March 2017, . . . Cytek launched its first flow cytometery system, the DxP Athena™" (see id. ¶ 137), and, "[o]n or about June 7, 2017, Cytek launched another flow cytometery system, the Cytek Aurora™," which system, according to Becton, "shares striking similarities with [a] spectral flow cytometer previously in development at [Becton] by Yan and other Individual Defendants" (see id. ¶ 138).

Based on the above events, Becton asserts the following ten Claims for Relief: (1) "Misappropriation/Threatened Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016"; (2) "Aiding and Abetting the Defend Trade Secrets Act of 2016"; (3) "Misappropriation/Threatened Misappropriation of Trade Secrets Under the California Uniform Trade Secrets [Act]"; (4) "Violation of California Unfair Competition Law"; (5)

---

[1] The following facts are taken from the Complaint.

[2] "A flow cytometer suspends cells with fluorescent labels ('dyes') in a stream of fluid and passes them individually past one or more lasers and optical detection circuitry[;] [t]he resulting fluorescence is detected and measured to determine various properties of the cells, which can in turn provide critical information about human diseases and health." (See id. ¶ 37.)

1  "Breach of Contract"; (6) "Breach of Implied Covenant of Good Faith and Fair Dealing";
2  (7) "Inducing Breach of Contract"; (8) "Unjust Enrichment"; (9) "Breach of Confidence";
3  and (10) "Common Law Conversion."

4  By the instant motions, Cytek seeks dismissal of all claims asserted against it,
5  namely, the First through Fourth, and Seventh through Tenth Claims for Relief, and the
6  Individual Defendants, along with joining in Cyteks motion, move separately to dismiss
7  the First and Second Claims for Relief on additional grounds, as well as to dismiss the
8  Fifth and Sixth Claims for Relief, which two claims are brought only against the Individual
9  Defendants.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555.

1 Courts "are not bound to accept as true a legal conclusion couched as a factual

2 allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

As noted, each of Becton's claims is challenged by one or more of the named defendants. The Court addresses each such claim below.

**A. Misappropriation of Trade Secrets (First and Third Claims for Relief)**

The elements of a misappropriation of trade secrets claim under the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA") are essentially the same. Under either statute, the owner of "information" that the owner has made "reasonable" efforts to keep secret and which "derives independent economic value . . . from not being generally known to" other persons, must show the defendant's wrongful "acquisition[,] . . . disclosure or use" thereof. See 18 U.S.C. §§ 1836, 1839; Cal. Civ. Code § 3426.1, 3426.3; see also Veronica Foods Co. v. Ecklin, No. 16-CV-07223-JCS, 2017 WL 2806706, at *12 (N.D. Cal. June 29, 2017) (noting the definitions of "trade secret" and "misappropriation" in CUTSA are "substantially identical to the definitions of those terms in the DTSA").

Defendants argue Becton has failed to adequately identify the trade secrets, i.e., the information, on which its misappropriation claims are based, and, further, that Becton has failed to allege any act of misappropriation occurring on or after the date of the DTSA's enactment.

**1. Identification of Trade Secrets**

Although, to plead a claim for misappropriation, a "plaintiff need not spell out the details of the trade secret" on which its claim is based, see Space Data Corp. v. X, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (internal quotation and citation omitted), such plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade," see Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998) (internal quotation, citation, and

emphasis omitted).

Here, in support of its claims, Becton alleges each individual defendant, with the exception of Reinin, downloaded one or more categories of information, for example, "design review templates" (see Compl. ¶ 83), "fluidics design files" see id. ¶ 88), and "source code files" (see id. ¶ 97; see also ¶¶ 77, 92, 102, 107, 112). Such allegations are, however, too broadly stated to identify the trade secrets on which Becton's claims are based. See, e.g., Space Data Corp., 2017 WL 5013363, at *2 (holding "high-level overview" of plaintiff's trade secrets, such as "data on the propagation of radio signals from stratospheric balloon-based transceivers," failed to satisfy requirements of Rule 8).[3] Moreover, a number of the categories are preceded by the phrases "such files included" and "such as," thereby further expanding the scope of the allegations in which the categories are contained. (See, e.g., Compl. ¶¶ 83, 88.)[4]

Becton's reliance on paragraph 61 of the Complaint, which paragraph provides "[e]xamples of confidential and proprietary information related to Project Newton[5] and other [Becton] flow cytometry products" (see Compl. ¶ 61; see also id. ¶ 154 (setting forth same examples)), likewise is unavailing. Given the inclusion of the phrase "and other [Becton] flow cytometry products" (see id. ¶ 61), Becton's reference to "Project Newton"

---

[3] Although some of the categories are described with greater detail than others (see Compl. ¶ 77), the parties, in discussing the sufficiency of the trade secret allegations, have treated them as a single group.

[4] In support of its Opposition, Becton has submitted a letter sent by its counsel to Cytek's counsel, in which the former identifies serial numbers of sixty-two USB drives onto which the Individual Defendants allegedly downloaded confidential information. (See Declaration of Henry Huang, filed March 23, 2018, Ex. D). Even assuming such evidence could be considered on a motion to dismiss, the identification of a device, let alone a large number of devices, is not, without further elaboration, sufficient to identify what information thereon is alleged to constitute a trade secret. Cf. Loop AI Labs Inc. v. Gatti, 195 F. Supp. 3d 1107, 1116 (N.D. Cal. July 6, 2016) (holding "identifying documents alone would not be an adequate substitution for detailed identification of the trade secrets therein").

[5] "Project Newton" is described in the Complaint as "a confidential project aimed at developing a flow cytometer with spectral analysis capabilities," on which Yan, Vrane, Gong, Zhong, and Jaimes worked. (See Compl ¶¶ 51, 55.)

5

does not, contrary to Becton's argument, serve to narrow the examples listed thereafter, and, in any event, there is no allegation that any of the defendants acquired, disclosed, or used any such information.[6]

Accordingly, Becton's First and Third Claims for Relief will be dismissed with leave to amend.

### 2. Applicability of DTSA

The DTSA applies to the "misappropriation of a trade secret . . . for which any act occurs on or after the date of [its] enactment," specifically, May 11, 2016. See Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat. 376, 381-82 (May 11, 2016). In addressing claims brought thereunder, a number of district courts have held the DTSA applies to wrongful use that began prior to the DTSA's enactment if such use continues to occur after its enactment. See Veronica Foods Co., 2017 WL 2806706, at *13 (citing cases); see e.g., Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc., No. 15-CV-02177-SI, 2017 WL 1436044 at *4 (N.D. Cal. Apr. 24, 2017) (holding "[n]othing suggests that the DTSA forecloses a use-based theory simply because the trade secret being used was misappropriated before the DTSA's enactment"). Where, however, a defendant discloses information to a person or entity prior to the DTSA's enactment, such defendant's post-enactment disclosure of the same information to that person or entity is insufficient to support a claim under the DTSA. See id. at *5 (holding plaintiff must allege facts sufficient to show "the information disclosed was new or somehow different from the [pre-enactment] misappropriation").

Here, the Individual Defendants argue that Becton, even if it had identified any trade secrets, has failed to allege, with regard to its DTSA claim, that any of the Individual Defendants who departed Becton prior to May 11, 2016, namely, Yan, Riley, Vrane, Zhang, Gong, Zhong, and Jaimes, committed any acts of misappropriation after that date.

---

[6] Further, the list of examples is preceded by the word "include," leaving the allegation ambiguous as to whether Becton's claim is based on additional information.

6

In response, Becton states its DTSA claim, to the extent brought against the above-referenced defendants, is based on their disclosure and use of Becton's trade secrets after the DTSA's enactment. In support of such claim, Becton relies on its allegations that Cytek, which had never previously produced a cytometer, launched, in March and June 2017, respectively, two cytometers, one bearing "striking similarities" to a cytometer Yan and other Individual Defendants had been developing at Becton. (See Compl. ¶¶ 132, 137-38.)

To the extent Becton's claim is based on a theory of disclosure, given Becton's allegations that the above-referenced seven individual defendants began working at Cytek between January 2015 and February 2016, i.e., anywhere from more than a year to, at a minimum, several months before the DTSA's May 11, 2016, enactment (see id. ¶¶ 76-106), Becton has failed to plausibly allege any of those defendants disclosed new information on or after that date. In particular, the Complaint contains no facts to show what trade secrets each of those defendants disclosed, or any facts to show it is unlikely that the trade secrets used to create Cytek's cytometers were disclosed before May 11, 2016. See Cave Consulting, 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017) (holding, "without facts about . . . whether the [post-enactment] information disclosed was new or somehow different from the [pre-enactment] misappropriation, plaintiff ha[d] failed to state a claim under the DTSA").

To the extent Becton's claim is based on a theory of use, however, the above-referenced allegations are sufficient to give rise to an inference that Yan and Jaimes, both of whom are alleged to have "worked directly on Cytek's Aurora™ flow cytometer, and . . . unveiled it together at the June 2017 CYTO conference" (see Compl. ¶ 79), used Becton's trade secrets on or after May 11, 2016, see Veronica Foods Co., 2017 WL 2806706, at *13 (holding "the DTSA applies to misappropriations that begin prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date"); cf. Cave Consulting, 2017 WL 1436044 at *4 (holding complaint subject to dismissal where defendant, prior to enactment of DTPA, had used plaintiff's trade secrets to obtain

7

customer, and plaintiff "generally allege[d] '[o]n information and belief'" such defendant also used plaintiff's trade secrets to compete for additional customers; noting complaint contained no allegations as to when additional use occurred). As to Riley, Vrane, Zhang, Gong, and Zhong, by contrast, the Complaint, apart from generally listing those defendants' job titles at Cytek, contains no allegations regarding what involvement, if any, those defendants had in the development of Cytek's cytometers, let alone when such involvement occurred. Consequently, Becton has failed to allege a theory of use as to those five defendants.

Accordingly, to the extent Becton brings its First Claim for Relief against Riley, Vrane, Zhang, Gong, and Zhong, such claim is subject to dismissal on said additional ground, again with leave to amend.

**B.      Aiding and Abetting Violation of the DTSA (Second Claim for Relief)**

Becton's Second Claim for Relief asserts that all defendants aided and abetted one another's violation of the DTSA. As set forth above, Becton has failed to allege a violation of the DTSA, and, consequently, Becton's claim for aiding and abetting such violation likewise will be dismissed with leave to amend.

**C.      CUTSA Preemption of State Law Claims (Fourth, Seventh, Eighth, Ninth, and Tenth Claims for Relief)**

CUTSA "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." See K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc., 171 Cal. App. 4th 939, 962 (2009) (citing Cal. Civ.Code § 3426.7(b)).[7] "[T]he nucleus of facts test does not focus on whether a non-CUTSA claim requires the pleading of different elements than the CUTSA claim, but rather on whether there is a material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in the non-CUTSA claim." See SunPower Corp. v. SolarCity Corp., No. 12-CV-00694-LHK, 2012 WL 6160472, at *12 (N.D. Cal. Dec. 11, 2012) (internal quotation, citation, and

---

[7] CUTSA excludes from preemption, however, "contractual remedies, whether or not based upon misappropriation of trade secrets." See Cal. Civ. Code § 3426.7(b).

8

alterations omitted). Notably, "the majority of district courts that have considered [the issue] have held that CUTSA supersedes claims based on the misappropriation of information," even where that information "does not satisfy the definition of trade secret under CUTSA." See id. at *6 (collecting cases).

Here, defendants contend, Becton's claim under the California Unfair Competition Law ("UCL"), as well as his claims for Inducing Breach of Contract, Unjust Enrichment, Breach of Confidence, and Conversion, are based on the "same nucleus of facts" as its CUTSA claim, and thus are preempted. The Court addresses each such claim in turn.

### 1. California Unfair Competition Law (Fourth Claim for Relief)

Although it is unclear from the Complaint what conduct forms the basis of Becton's UCL claim, Becton, in its Opposition, clarifies that the claim is based on its allegations that Cytek engaged in a "successful poaching campaign" (see Opp. at 19:4) that enabled it to "recruit away [Becton's] employees due to their knowledge of confidential information" (see id. at 19:13-14; see also id. at 18:25-19:1 (citing Compl. ¶¶ 56, 76, 78, 84, 135)). Assuming, arguendo, Becton has pleaded such a "poaching campaign," Becton's reliance thereon is unavailing.

Under California law, "competitors may solicit another's employees if they do not use unlawful means or engage in acts of unfair competition." See Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App. 4th 853, 859 (Cal. Ct. App. 1994). Here, Becton's theory of "unlawful means" or "acts of unfair competition," see id., namely, Cytek's recruiting of Becton's employees "due to their knowledge of confidential information" (see Opp. at 19:13-14), rests squarely on Becton's allegations of trade secret misappropriation, and, consequently, cannot save its UCL claim from preemption, see Waymo LLC v. Uber Technologies, Inc., 256 F. Supp. 3d 1059, 1062 (N.D. Cal. June 8, 2017) (holding, "[a]t the pleading stage, [CUTSA preemption] analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action").

Becton's reliance on Codexis, Inc. v. Enzymeworks, Inc., No. 16-CV-00826-WHO,

1  2016 WL 4241909, at *7-8 (N.D. Cal. Aug. 11, 2016) is misplaced. There, the court,

2  "[c]onsidering the range of conduct pleaded," which included "photographing [the

3  plaintiff's] presentation during a conference in violation of the conference's rules," and

4  "reverse engineering" the plaintiff's products in "violat[ion] of the terms and conditions" of

5  the contracts under which the products were sold, found the plaintiff's common law unfair

6  competition claim was based on facts "independent" of trade secret misappropriation,

7  and, consequently, was not preempted by CUTSA. See id. at 8 (internal quotation and

8  citation omitted); see also id. at 3-4. Here, by contrast, Becton has not alleged any such

9  "independent" improper conduct.

Accordingly, Becton's Fourth Claim for Relief will be dismissed with leave to amend.

### 2. Inducing Breach of Contract (Seventh Claim for Relief)

In its Seventh Claim for Relief, Becton alleges "Cytek and Yan caused one or more of Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook to breach their contracts with [Becton] by hiring them away from [Becton] to work on Cytek's flow cytometry products, using [Becton's] confidential information." (See Compl. ¶ 224.) As pleaded, such claim is based on the same wrongdoing as Becton's CUTSA claim, and thus is preempted. See SunPower Corp., 2012 WL 6160472, at *12 (holding, to avoid preemption, there must be a "material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in the non-CUTSA claim") (internal quotation, citation, and alterations omitted).

In its Opposition, Becton contends the Complaint can be read to include a claim that Cytek and Yan also induced the above-referenced defendants to breach their contractual obligations to "assign to [Becton] all right, title, and interest in any innovations developed during the time of their employment or a period of one year after their employment." (See Opp. at 20:7-9 (citing Compl. ¶ 119).) Although a claim, to the extent based on a breach of such contractual obligation, would appear to assert a wrong that could exist whether or not the Complaint is "stripped of facts supporting trade secret

10

1  misappropriation," see Waymo LLC, 256 F. Supp. 3d at 1062, the Complaint here fails to
2  allege facts to show, either directly or by inference, any breach of such obligation.

3  In particular, Becton relies on its allegation that, "[s]ince 2016, Cytek has filed
4  patent applications directed to technologies relating to spectral flow cytometry, including
5  published applications with Yan and Vrane as named inventors." (See Compl. ¶ 139.)
6  The Court reads that allegation as stating Cytek began filing its patent applications at
7  some point in 2016. Becton also alleges, however, that Yan and Vrane both "departed"
8  Becton in early 2015 (see id. ¶¶ 76, 87), potentially more than a year before the filing of
9  any such application, and, consequently, Becton cannot rely on timing alone to support
10 its claim. Consequently, given the lack of any allegation identifying the patent
11 applications on which Yan and Vrane are named, let alone the "innovation" embodied
12 therein, Becton has failed to plausibly allege such innovations fall within the scope of the
13 cited contract provision. See Twombly, 550 U.S. 544, 570 (2007) (holding plaintiff must
14 allege facts sufficient to "nudge[] their claims across the line from conceivable to
15 plausible").

16 Accordingly, Becton's Seventh Claim for Relief will be dismissed with leave to
17 amend.

### 3. Unjust Enrichment (Eighth Claim for Relief)

19 In its Eighth Claim for Relief, Becton alleges "[d]efendants have been enriched by
20 the taking, retaining, and misuse of [Becton's] confidential, proprietary, and trade secret
21 information, including R&D work for [Becton's] spectral flow cytometry project." (See
22 Compl. ¶ 228.) As pleaded, Becton's Unjust Enrichment claim is based on the same
23 wrongdoing as Becton's CUTSA claim, and thus is preempted. See SunPower Corp.,
24 2012 WL 6160472, at *12.

25 In its Opposition, Becton contends its claim is based on the "[t]he wrongful
26 issuance and retention of benefits derived from any patent applications based on work
27 the Individual Defendants performed at [Becton]." (See Opp. at 20:26-27 (citing Compl.
28 ¶ 119).) As discussed above, however, Becton has failed to allege facts showing its

11

right to any interest in Cytek's patent applications, and, in any event, the Complaint fails to allege Cytek has obtained any patents, or has otherwise been enriched by the filing of the above-referenced patent applications.

Accordingly, Becton's Eighth Claim for Relief will be dismissed with leave to amend.

### 4. Breach of Confidence (Ninth Claim for Relief)

In its Ninth Claim for Relief, Becton alleges "[d]efendants have misused [Becton's] confidential and proprietary information in breach of confidentiality obligations and/or as a result of discovery by improper means by the development, sale, marketing, distribution and maintenance of Cytek's DxP Athena™ flow cytometer system and Cytek's Aurora™ spectral flow cytometry system, including in the United States." (See Compl. ¶ 235.) As pleaded, such claim is based on the same wrongdoing as Becton's CUTSA claim, and thus is preempted. See SunPower Corp., 2012 WL 6160472, at *12.

In its Opposition, Becton contends its Breach of Confidence claim, like its Unjust Enrichment claim, rests on "Cytek's continued benefit from patents and patent applications derived from the Individual Defendants' work at [Becton]." (See Opp. at 21:7-8.) As discussed above, however, the present allegations are insufficient to support such a claim.

Accordingly, Becton's Ninth Claim for Relief will be dismissed with leave to amend.

### 5. Conversion (Tenth Claim for Relief)

In support of its Tenth Claim for Relief, Becton alleges "[d]efendants have intentionally and unlawfully exercised dominion over [Becton's] property, including but not limited to, its removable media devices, papers, and/or notebooks containing confidential and proprietary information, by both the transfer of thousands of files related to [Becton's] confidential and proprietary flow cytometry projects, and by the departure *en masse* of the Individual Defendants from [Becton] to Cytek, along with significant knowledge and know-how . . . ." (See Compl. ¶ 239.)

The only reasonable inference that can be drawn from such allegation is that

12

Becton's conversion claim is based on its property right in the confidential information contained in the above-referenced tangible property. See Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc., No. 16-CV-03737-JCS, 2017 WL 412524, at *7 (N.D. Cal. Jan. 31, 2017) (holding defendant "may not evade CUTSA preemption simply by alleging that the confidential information at issue was written on a piece of paper or embodied in a model where there are no allegations suggesting that the tangible property . . . had any value apart from the confidential information disclosed in it"); see also K.C. Multimedia, Inc., 171 Cal. App. 4th at 961 (holding common law claims preempted by CUTSA where "the gravamen of the wrongful conduct asserted [in support of common law claim] is the misappropriation of trade secrets").

Accordingly, Becton's Tenth Claim for Relief will be dismissed with leave to amend. If Becton wishes to base its claim on the conversion of office supplies, it shall, in any amended pleading, clarify the nature of its conversion claim and allege the value of any such supplies independent of the trade secrets contained therein.

**D.  Contract Claims (Fifth and Sixth Claims for Relief)**

The Individual Defendants contend the Complaint fails to include sufficient facts to show any such defendant, with the exception of Shook, breached his/her contract with Becton.[8]

**1.  Breach of Contract (Fifth Claim for Relief)**

In its Fifth Claim for Relief, Becton alleges "[t]he downloading and removal of [Becton's] confidential and trade secret information by Riley, Yan, Vrane, Zhang, Gong, Zhong, Reinin, and Shook violated their obligation in the [Employment] Agreement to return all of [Becton's] property at termination, regardless of the format of such property." (See Compl. ¶ 213.) The Individual Defendants contend Becton, by "lump[ing] all of the Individual Defendants into one pile" (see Reply at 4:8-9), has failed to allege any of the

---

[8] As noted, CUTSA does not preempt "contractual remedies, whether or not based upon misappropriation of a trade secret." See Cal. Civ. Code § 3426.7(b).

Individual Defendants, with the exception of Shook, "took" any of Becton's data upon their departure from Becton (see id. at 4:3, 8-9; see also Compl. ¶ 112 (alleging "Shook downloaded multiple files to one or more removable media devices, and . . . . took these devices with her when she left [Becton]")).[9] The Court agrees.

First, with regard to Reinin, Becton admits that, "[b]ased on [Becton's] investigation to date, the Complaint does not allege that Reinin improperly downloaded computer files." (See Opp. at 5 n.1.) As to the remaining defendants, Becton relies on paragraph 146 of the Complaint, which alleges: "The Individual Defendants were in possession of the misappropriated trade secrets, as well as their individual and combined knowledge of [Becton's] proprietary and confidential information related to [Becton's] flow cytometry and spectral flow cytometery, when they joined Cytek and, on information and belief, used those trade secrets in their work there for the benefit of Cytek." (See id. ¶ 146.) That paragraph, however, like paragraph 213, fails to set forth, as to each individual defendant, the particular conduct on which the claim against him/her is based.

Accordingly, to the extent Becton brings its Fifth Claim for Relief against Riley, Yan, Vrane, Zhang, Gong, Zhong, and Reinin, such claim will be dismissed with leave to amend.

**2.  Breach of Implied Covenant of Good Faith and Fair Dealing (Sixth Claim for Relief)**

In its Sixth Claim for Relief, Becton alleges that, "[b]y taking and remaining in possession of [Becton's] confidential information from [Becton], Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook violated, and continue to violate, the [Employment] Agreement's implied covenant of good faith and fair dealing by frustrating [Becton's] rights to benefit from [the Employment] Agreement." (See Compl. ¶ 217.) As the Individual Defendants point out, however, such claim is based on the same contractual violation as Becton's Breach of Contract claim, namely, the Individual

---

[9] Defendant Shook has not moved to dismiss the Fifth Claim for Relief.

14

Defendants' failure to return Becton's confidential information upon departure from the company, and, consequently, fails. See Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 327 (Cal. Ct. App. 2000) (affirming dismissal of implied covenant claim; holding, "where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous").[10]

Although, in its Opposition, Becton contends its Sixth Claim for Relief is also based on the Individual Defendants' disclosure of Becton's confidential information (see Opp. at 17:14-16 (citing Compl. ¶¶ 142, 150)), Becton's claim, as currently pleaded, cannot be read to be based on such theory (see Compl. ¶ 217). The Court will, however, afford Becton leave to amend to allege, if it can do so, a contract claim based thereon.

Accordingly, Becton's Sixth Claim for Relief with be dismissed with leave to amend.

## CONCLUSION

For the reasons set forth above, Cytek's and the Individual Defendants' motions are hereby GRANTED, and all claims against said defendants are DISMISSED with leave to amend. Any First Amended Complaint shall be filed no later than June 8, 2018.

**IT IS SO ORDERED.**

Dated: May 21, 2018

MAXINE M. CHESNEY
United States District Judge

---

[10] Even assuming, as Becton contends, the above-referenced contracts are governed by New Jersey law, Becton's Sixth Claim for Relief would be subject to dismissal, as, under New Jersey law, breach of the implied covenant does not create an independent cause of action where it is based on the same underlying conduct as the plaintiff's breach of contract claim. See Wade v. Kessler Institute, 172 N.J. 327, 344 (N.J. 2002) (rejecting argument that, "in breaching a literal term of the [contract], defendant also could be found separately liable for breaching the implied covenant . . . when the two asserted breaches basically rest on the same conduct").