IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES INC., et al.,<br><br>Defendants. | Case No. 18-cv-00933-MMC<br><br>**ORDER GRANTING MOTION TO DISMISS; AFFORDING LEAVE TO AMEND**<br><br>Re: Dkt. No. 88 |

Before the Court is plaintiff/counterdefendant Becton, Dickinson and Company's ("BD") motion, filed October 29, 2018, to dismiss the First Cause of Action asserted against it in defendant/counterclaimant Cytek Biosciences, Inc.'s ("Cytek") Counterclaims. Cytek has filed opposition, to which BD has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND[2]

Cytek is a company that "provide[s] . . . flow cytometry products and services in the United States."[3] (See Counterclaims ¶ 2.) BD is a company that, according to Cytek, "dominates more than half the United States market for flow cytometers" (see id. ¶ 2) and "commands 30-40% of the cytometry reagent market in the United States" (see id. ¶ 19).[4]

---

[1] By order filed January 22, 2019, the Court took the motion under submission.

[2] The following facts are taken from the Counterclaims.

[3] "Flow cytometry is a powerful, laser-based technology used for identifying and quantifying cellular characteristics on a cell-by-cell basis that offers a variety of biomedical and therapeutic applications." (See id. ¶ 1.)

[4] "Reagents are essential consumable substances used in flow cytometers to identify and

In June 2017, Cytek "release[d] . . . the Cytek™ Aurora ("Aurora") cytometer," a cytometer that "depart[s] from the traditional cytometer designs that BD and others have employed." (See id. ¶ 14.)

Cytek alleges that, "just months after the Aurora's release," Cytek was informed by one of its customers that "a BD executive threatened that BD would no longer supply the customer with the critical reagents for its BD cytometers if the [customer] purchased an Aurora from Cytek." (See id. ¶ 18.) Cytek further alleges that, sometime "earlier" in 2018, it "learned . . . that BD falsely told a representative of a large, public research university and potential Cytek customer that Cytek 'stole' the technology in the Aurora flow cytometer from BD." (See id. ¶ 34.)

Moreover, Cytek alleges, BD has required its employees to "enter into employee agreements" which contain "an assignment, or 'holdover,' provision that requires former employees to assign all 'right, title, and interest in any Innovation relating to Confidential Information arising because of [their] employment with [BD], conceived or made by [them] . . . at any time for a period of one (1) year after employment." (See id. ¶¶ 51-52 (alterations in original) (emphasis omitted).)

Based on the above, Cytek filed its Answer and Counterclaims, in which Cytek asserts two Causes of Action against BD. In particular, Cytek asserts a claim for injunctive relief under California Business and Professions Code § 17200, California's Unfair Competition Law ("UCL") (First Cause of Action), and a claim for declaratory relief under 28 U.S.C. § 2201 (Second Cause of Action).

By the instant motion, BD seeks an order dismissing the First Cause of Action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

---

analyze certain cellular characteristics," and "are marketed and sold separate and apart from the cytometry machines themselves." (See id. ¶ 19.)

under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

As noted above, BD seeks dismissal of Cytek's First Cause of Action, which asserts a claim solely for injunctive relief under the UCL.[5]

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." See Cal. Bus. & Prof. Code § 17200. The California Supreme Court has recognized that "[b]ecause [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." See Cel-Tec Comm'ns, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180 (1999).

---

[5] In its Opposition, Cytek clarifies that it "is seeking injunctive relief under the UCL, not restitution." (See Opp. at 22:18-19.)

3

Cytek asserts BD violated the "unfair" and "unlawful" prongs of the UCL.[6] BD contends the First Cause of Action is subject to dismissal because Cytek has not pled sufficient facts to state a claim under either of the above-referenced prongs and because Cytek has not adequately alleged it is entitled to injunctive relief under the UCL.

The Court addresses below each of BD's proffered grounds for dismissal.

**A.  Failure to Allege Sufficient Facts to State a Claim**

**1.  The "Unfair" Prong**

Under the "unfair" prong of the UCL, "a practice may be deemed unfair even if not specifically proscribed by some other law." See Cel-Tech, 20 Cal.4th at 180. A competitor's conduct constitutes an "unfair" business practice when such "conduct . . . threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." See id. at 187.

Cytek alleges BD has engaged in conduct that "threatens an incipient violation" of section 3 of the Clayton Act, 15 U.S.C. § 14, as well as the Cartwright Act, specifically, California Business and Professions Code §§ 16720 and 16727. (See Counterclaims ¶ 46.) In particular, Cytek alleges, "a BD executive threatened that BD would no longer supply [a Cytek] customer with the critical reagents for its BD cytometers if the [customer] purchased an Aurora from Cytek" (see id. ¶ 18) and, in so doing, attempted to "[tie] . . . the sale of its reagents to its customers' refusal to purchase competing Cytek machines" (see id. ¶ 45) ("tying arrangement theory").[7]

BD contends Cytek has not adequately alleged BD has engaged in conduct that would result in a tying arrangement that is per se illegal under either the Clayton Act or the Cartwright Act.

---

[6] In their respective memoranda filed in connection with the instant motion, neither party discusses the "fraudulent" prong.

[7] Although Cytek alleges "BD has made similar threats to other potential Cytek customers" (see id. ¶ 21), the allegation is entirely lacking in factual support.

4

### a. Section 3 of the Clayton Act

Pursuant to section 3 of the Clayton Act, it is "unlawful for any person engaged in commerce . . . to . . . make a sale or contract for sale of goods . . . on the condition, agreement, or understanding that the . . . purchaser thereof shall not use or deal in the goods . . . of a competitor . . . where the effect of such . . . contract for sale or condition, agreement, or understanding may be to substantially lessen competition." See 15 U.S.C. § 14. "Although the literal terms of [section 3 of the Clayton Act] refer to exclusive dealing contracts, the Supreme Court has extended its application to tying arrangements." Moore v. Jas. H. Matthews & Co., 550 F.2d 1207, 1213-14 (9th Cir. 1977).

A tying arrangement is "defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." See N. Pac. Ry. Co. v. United States, 356 U.S. 1, 5-6 (1958). "Three elements must be satisfied to establish that a tying arrangement is illegal per se: (1) a tie-in between two products or services sold in different markets, (2) market power in the tying product, and (3) the tying arrangement affects a not insubstantial volume of commerce." Datagate Inc. v. Hewlett-Packard Co., 60 F.3d 1421, 1423-24 (9th Cir. 1995). The above-referenced test applies in determining whether a tying arrangement violates section 1 of the Sherman Act or section 3 of the Clayton Act. See Airweld, Inc. v. Airco, Inc., 742 F.2d 1184, 1189 n.2 (9th Cir. 1984) (applying same elements to analyze whether tying arrangement "violated . . . section 1 of the Sherman Act . . . and section 3 of the Clayton Act"); see also Mozart v. Mercedes-Benz of N. Am., 833 F.2d 1342, 1352 (9th Cir. 1987) (noting "the elements for establishing a Sherman Act § 1 claim and a Clayton Act § 3 claim" based on an illegal tying arrangement "are virtually the same").

Here, while BD acknowledges Cytek, to state a claim under the "unfair" prong of the UCL, need not allege that a purported tying arrangement has been consummated (see Reply at 3:20-4:6; see also id. at 5:19-6:2), BD contends Cytek has not adequately

1  alleged BD engaged in conduct that threatens an incipient violation of section 3 of the
2  Clayton Act.  Specifically, BD argues that, even if the purported tying arrangement had
3  been consummated, Cytek "fails to plausibly allege BD's market power in the purported
4  tying product market" (see Mot. at 12:27-28), and "fails to allege foreclosure of a not-
5  insubstantial dollar-volume of sales in the purported tied product market" (see Mot. at
6  15:13-14).  As set forth below, the Court agrees.

### i. Market Power

Market power refers to "the power, within the market for the tying product, to raise prices or to require purchasers to accept burdensome terms that could not be exacted in a completely competitive market."  See United States Steel Corp. v. Fortner Enters., 429 U.S. 610, 620 (1977) ("Fortner II").  In evaluating whether a seller possesses market power, courts consider "whether the seller has some advantage not shared by his competitors in the market for the tying product."  See id.  "When the seller's share of the market is high, or when the seller offers a unique product that competitors are not able to offer, the [Supreme Court] has held that the likelihood that market power exists and is being used to restrain competition in a separate market is sufficient to make per se condemnation appropriate."  Jefferson Parish Hosp. District No. 2 v. Hyde, 466 U.S. 2, 13 (1984) (internal citations omitted).

As to market share, Cytek alleges BD "commands 30-40% of the cytometry reagent market in the United States."  (See Counterclaims ¶ 19.)  Such allegation, does not, however, support an inference that BD has market power in the tying product market. See Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 611-12 (holding publishing company did not have market power where its sales comprised 40% of total sales in tying product market); see also Jefferson Parish Hosp., 466 U.S. at 26-27 (holding hospital did not have market power where it served 30% of total patients in tying product market).

As to the uniqueness of the tying product, Cytek alleges "[t]he reagent BD threatened to withhold was a proprietary BD-licensed formulation . . . for which there is no market alternative" because BD holds a patent on it.  (See Counterclaims ¶ 20; see also

6

id. ¶ 20 n.5 (noting BD has "filed suit for patent infringement" against "competitor [who has] marketed what BD referred to as 'copycat products'").) Contrary to Cytek's argument, however, ownership of "a patent does not necessarily confer market power on the patentee," see Illinois Tool Works Inc. v. Independent Ink. Inc, 547 U.S. 28, 45 (2006), and Cytek does not allege any other facts to show "other competitors [in the tying product market] are in some way prevented from offering the distinctive product themselves," see Fortner II, 420 U.S. at 621.

### ii. Substantial Volume of Commerce Affected

When evaluating whether a tying arrangement affects a substantial volume of commerce, "the controlling consideration is simply whether a total amount of business, substantial enough in terms of dollar-volume so as not to be merely de minimis, is foreclosed to competitors by the tie[.]" See Fortner Enters., Inc. v. United States Steel Corp., 394 U.S. 495, 501 (1969) ("Fortner I"). "The 'not insubstantial' requirement can be satisfied by the foreclosure of a single purchaser, so long as the purchaser represents a 'not insubstantial' dollar-volume of sales." Datagate, Inc. v. Hewlett-Packard Co., 60 F.3d 1421, 1425 (9th Cir. 1995).

Here, Cytek's Counterclaims lack sufficient facts to support a finding that the tying arrangement at issue, if consummated, would result in the foreclosure of sales by Cytek involving a "not insubstantial dollar-volume." Indeed, Cytek does not plead any facts showing the customer to whom the tying arrangement was presented had any interest in purchasing a cytometer from Cytek, such that the arrangement was likely to result in the loss of a sale by Cytek. Moreover, Cytek alleges its cytometers "range in price from tens of thousands of dollars to more than [a] quarter of a million dollars per machine" (see Counterclaims ¶ 39); Cytek does not allege the price of the cytometer the above-referenced customer would have purchased, nor, given the ambiguity in the above-quoted description of the alleged lowest-priced cytometer, has Cytek shown such purchase necessarily would entail a not insubstantial sum. See, e.g., Fortner I, 394 U.S. at 502 (holding foreclosure of $190,000 in sales was not "paltry or 'insubstantial'");

Moore, 550 F.2d at 1216 (noting "[t]he 'not insubstantial' test has been met by showing dollar volumes which total $60,800, and estimated sales of $86,376" (internal citations omitted)); Thompson v. Metro-Multi-List, 934 F.2d 1566, 1578 (11th Cir. 1991) (holding loss of membership dues "between $30,000.00 – 70,000.00 . . . is clearly substantial").

### b. The Cartwright Act

"A tying arrangement may be condemned under either or both [Cal. Bus. & Prof. Code] section 16720 and section 16727." Morrison v. Viacom Inc., 66 Cal. App. 4th 534, 541 (1998). To establish a "per se tying arrangement violative of section 16720," the following elements must be met:

> (1) a tying agreement, arrangement or condition whereby the sale of the tying product was linked to the sale of the tied product or service; (2) the party had sufficient economic power in the tying market to coerce the purchase of the tied product; (3) a substantial amount of sale was affected in the tied product; and (4) the complaining party sustained pecuniary loss as a consequence of the unlawful act.

See id. at 541-42. "Under section 16727, a per se violation is established if *either* element (2) or (3) is established along with elements (1) and (4)." See id. at 542 (emphasis in original); see also Nicolosi Distrib., Inc. v. BMW of N. Am., 2011 WL 1483424, at *2 (N.D. Cal. Apr. 19, 2011).

BD contends Cytek fails to adequately allege BD's conduct threatens an incipient violation of the Cartwright Act "for the same reasons it fails to state a federal tying claim." (See Mot. at 16:15-16; see also Reply at 9:15-16). The Court agrees.

As discussed above, Cytek's Counterclaims lack sufficient facts to support a finding that BD has market power in the reagent market in the United States, that the tying arrangement at issue would affect a substantial volume of commerce in the cytometer market, or that Cytek would suffer a pecuniary loss as a consequence of BD's conduct.

### c. Conclusion as to "Unfair" Prong

To the extent the First Cause of Action is premised on Cytek's tying arrangement theory, such claim is subject to dismissal.

8

### 2. The "Unlawful" Prong

Under the "unlawful" prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." See Cel-Tech, 20 Cal. 4th at 180 (internal quotation and citation omitted).

Cytek alleges BD engaged in unlawful conduct when: (1) "BD falsely told a representative of a large, public research university and potential Cytek customer that Cytek 'stole' the technology in the Aurora flow cytometer from BD" (see Counterclaims ¶ 34) ("false statement theory");[8] and (2) BD "require[d] its employees . . . to enter into employee agreements that are illegal under California Business & Professions Code § 16600" (see id. ¶ 51) ("employee agreement theory").

While BD does not challenge the sufficiency of the factual allegations underlying Cytek's claim based on its employee agreement theory,[9] BD contends Cytek's Counterclaims lack sufficient facts to state a claim based on its false statement theory.

First, BD contends Cytek's allegations underlying its false statement theory are insufficient to state a claim under the "unlawful" prong of the UCL because Cytek "fail[s] to identify the legal basis for this claim." (See Reply at 10:12-13.) The Court agrees.

As BD correctly points out, the allegations in Cytek's Counterclaims do not identify the statute BD purportedly violated when it made the statement at issue. For this reason alone, Cytek has failed to state a claim under the "unlawful" prong of the UCL, as "a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." See Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (2007); see also E & E Co. v. Kam Hing Enters., 2008 WL 1924905, at *1 (N.D. Cal. Apr.

---

[8] Although Cytek alleges it "has learned of repeated instances of BD and its sales representatives making false statements of fact about Cytek's products and practices" (see id. ¶ 33), the allegation is lacking in any factual support beyond the above-referenced instance.

[9] Although Cytek characterizes the "holdover clauses" (see id. ¶ 54) as "illegal" and, consequently, unlawful, Cytek also alleges BD's use of such contractual provision is "unfair" (see id. ¶ 51). In any event, BD does not challenge the sufficiency of the underlying factual allegations under either theory.

9

1 29, 2008) (holding "plaintiff's allegations [were] insufficient to satisfy the 'unlawful' prong, for the reason that allegations of illegality must be accompanied by reference to a particular statute"); Gonzalez v. Trust, 2015 WL 12081028, at *2 (S.D. Cal. Sep. 28, 2015) (dismissing claim under "unlawful" prong; noting, "while [p]laintiffs may have alleged facts to support a statutory violation, [p]laintiffs have not identified any such statute in their allegations directed at [defendant]").

Next, BD argues that, even assuming Cytek's Counterclaims had identified California Civil Code § 43 as the basis for its false statement theory, see Cal. Civ. Code § 43 (providing persons "the right of protection . . . from defamation"), Cytek has not pled sufficient facts to state a claim for defamation. As set forth below, the Court again agrees.

"Defamation is the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or that causes special damage." Grenier v. Taylor, 234 Cal. App. 4th 471, 486 (2015). In order to plead a claim for defamation, "the defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement." See Pruitt v. Genentech, Inc., 2017 WL 3641783, at *4 (E.D. Cal. Aug. 24, 2017); see also MacKinnon v. Logitech, Inc., 2016 WL 541068, at *5 (N.D. Cal. Feb. 11, 2016) (noting "defamatory statement must be specifically identified" and "plaintiff must plead the substance of the statement" (internal quotation and citation omitted)). Specifically, to withstand dismissal, "the complaint must reference the speakers of the defamatory communications, the recipients, the timing, or the context in which they were made, sufficient to provide [the defendant] with notice of the issues to prepare a defense." See Pruitt, 2017 WL 3641783 at *4 (alteration in original) (internal quotation and citation omitted); see also MacKinnon, 2016 WL 541068 at *5 (noting plaintiff, to plead defamation claim, must "specifically identify who made the statements, when they were made, and to whom they were made" (internal quotation and citation omitted)); Cook v. UPS Cartage Service, Inc., 2018 WL 3630043, at *2 (E.D. Cal. July 31, 2018) (dismissing defamation claim where plaintiff failed to allege identity of

10

speakers and recipients of defamatory statements, as well as time or context in which statements were made).

Here, although Cytek alleges "BD falsely told a representative of a large, public research university and potential Cytek customer that Cytek 'stole' the technology in the Aurora flow cytometer from BD" (see Counterclaims ¶ 34), the allegation "lacks the requisite specificity" to state a claim for defamation. See Pruitt, 2017 WL 3641783 at *4. In particular, Cytek does not adequately allege the identity of the speaker or the recipient, when such statement was made, and the context in which the statement was made.[10]

Accordingly, to the extent the First Cause of Action is based on Cytek's false statement theory, such claim is subject to dismissal.

## B. Failure to Allege Entitlement to Injunctive Relief

As noted above, Cytek's First Cause of Action asserts a claim solely for injunctive relief. (See Counterclaims ¶ 57.) BD contends Cytek has not adequately alleged entitlement to such relief because Cytek "alleges no basis for a remedy to stop any non-speculative future harm." (See Reply at 15:23-24.) The Court agrees.

Under California law, courts may award injunctive relief "as may be necessary to prevent the use or employment . . . of any practice which constitutes unfair competition." See Cal. Bus. & Prof. Code § 17203. Injunctive relief under § 17203, however, "cannot be used . . . to enjoin an event which has already transpired; a showing of threatened future harm or continuing violation is required." See People v. Toomey, 157 Cal. App. 3d 1, 20 (1984). "Injunctive relief has no application to wrongs which have been completed, absent a showing that past violations will probably recur." Id. (internal citation omitted). Where a plaintiff's UCL claim lacks facts showing he or she is entitled to the relief sought under the UCL, such claim is subject to dismissal. See Ice Cream Distribs. of Evansville,

---

[10] To the extent BD argues the alleged statement is privileged under California's litigation privilege, California's common interest privilege, and the Noer-Pennington doctrine, such argument is premature, given the absence of sufficient facts regarding the circumstances under which the statement was made.

11

LLC v. Dreyer's Grand Ice Cream, Inc., 487 Fed. App'x 362, 363 (9th Cir. 2012) (affirming dismissal of UCL claim where plaintiff sought injunction and restitution but did not plead facts demonstrating entitlement to either form of relief).

Here, Cytek's tying arrangement and false statement theories are premised on statements purportedly made by BD representatives at some point in time between the Aurora's release in 2017 and the filing of the Counterclaims in 2018 (see Counterclaims ¶¶ 18, 34) and, consequently, are based on events "which [have] already transpired." See Toomey, 157 Cal. App. 3d at 20. Cytek's Counterclaims lack, however, sufficient facts to support a finding that such conduct "will probably recur" in the future. See id.

Next, with respect to Cytek's employee agreement theory, Cytek alleges it may be subject to future harm because "BD has asserted claims against Cytek . . . for inducing breach of [the] illegal holdover clauses," and, although such claims "have been dismissed," BD's "discovery requests . . . make clear that BD intends to pursue this claim in the future following additional discovery." (See Counterclaims ¶ 54.) In particular, Cytek alleges, BD has "request[ed] production by Cytek . . . of '[a]ll documents concerning patents, patent applications, or invention disclosure statements relating to Flow Cytometry Systems or Spectral Flow Cytometry Systems that were drafted, submitted, or filed by [Cytek or on Cytek's behalf] . . .' from January 1, 2012 to present." (See id. ¶ 31 (alterations in original).)

Cytek's allegations do not support a finding that BD will reassert against Cytek a claim for inducement of breach of contract premised on the "holdover provision." The Court dismissed BD's inducement of breach of contract claim on the ground such claim was preempted by the California Uniform Trade Secrets Act (see Doc. No. 65 (Order Granting Cytek's Motion to Dismiss) at 10-11), and Cytek has not pleaded any facts showing how the above-referenced discovery, or any other discovery, will provide BD with information sufficient to avoid that legal bar or to allow BD to reassert the "holdover provision" as the basis of any other claim.

Accordingly, to the extent the First Cause of Action is premised on Cytek's

employee agreement theory, such claim is subject to dismissal, and, to the extent the First Cause of Action is premised on the tying arrangement and false statement theories, such claim is subject to dismissal on this additional ground as well.

## CONCLUSION

For the reasons set forth above, BD's motion to dismiss is hereby GRANTED and Cytek's First Cause of Action is hereby DISMISSED with leave to amend. Cytek's Amended Counterclaims, if any, shall be filed no later than March 7, 2019.

**IT IS SO ORDERED.**

Dated: February 14, 2019

MAXINE M. CHESNEY
United States District Judge

13