1
2
3
4                    IN THE UNITED STATES DISTRICT COURT
5                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7   BECTON, DICKINSON AND                 Case No.  18-cv-00933-MMC
    COMPANY,
8                                         **ORDER GRANTING MOTION TO**
                   Plaintiff,             **DISMISS; AFFORDING LEAVE TO**
9                                         **AMEND**
           v.
10                                        Re: Dkt. No. 116
    CYTEK BIOSCIENCES INC., et al.,
11
                   Defendants.
12

13          Before the Court is plaintiff/counterdefendant Becton, Dickinson and Company's

14  ("BD") motion, filed April 5, 2019, to dismiss the First Cause of Action asserted against it

15  in defendant/counterclaimant Cytek Biosciences, Inc.'s ("Cytek") First Amended

16  Counterclaims ("FACC").  Cytek has filed opposition, to which BD has replied.

17          Having read and considered the papers filed in support of and in opposition to the

18  motion, the Court rules as follows.[1]

19                                  **BACKGROUND**

20          Cytek is a company that "provide[s] . . . flow cytometry products and services in

21  the United States."  (See FACC ¶ 2.)[2]  BD is a company that, Cytek alleges, "dominates

22  more than half the United States market for flow cytometers" (see id. ¶ 2) and "markets a

23  number of different reagents" (see id. ¶ 21).[3]  Cytek further alleges that BD "has 100% of

24  _____

25  [1] By order filed June 11, 2019, the Court took the motion under submission.

26  [2] "Flow cytometry is a powerful, laser-based technology used for identifying and
    quantifying cellular characteristics on a cell-by-cell basis that offers a variety of
27  biomedical and therapeutic applications."  (See id. ¶ 1.)

28  [3] "Reagents are essential consumable substances used in flow cytometers to identify and

United States District Court
Northern District of California

the global market for . . . UV reagents" (see id. ¶ 47), which are "designed to interact specifically with UV light" in flow cytometers (see id. ¶ 22).

In June 2017, Cytek "release[d] . . . the Cytek Aurora™ ('Aurora') cytometer" (see id. ¶ 14), a cytometer that, according to Cytek, "depart[s] from the traditional cytometer designs that BD and others have employed for decades" (see id.) and "provides superior or equal performance to the BD FACSymphony for half the cost" (see id. ¶ 48).[4]

Cytek alleges that, "[j]ust months after the Aurora's release," one of its customers "relayed" that "a BD executive threatened that BD would no longer supply the customer with the critical reagents for its BD cytometers if the [customer] purchased an Aurora from Cytek." (See id. ¶ 18.) Cytek further alleges that "[a] major U.S. cancer treatment center that was in discussions for the purchase of [an] Aurora reported to Cytek sales personnel that BD was holding hostage a reagent that is available only from BD," and that "[a]nother cancer research center in the U.S. has also reported to Cytek sales personnel that, despite interest, it could not engage in the evaluation or purchase of a Cytek Aurora flow cytometer because it feared losing access to necessary BD reagents." (See id. ¶ 19)

Moreover, Cytek alleges, BD "requir[ed] its employees – including certain Individual Defendants[5] – to enter into employee agreements" (see id. ¶ 50), which contained "an assignment, or 'holdover,' provision that requires former employees to assign all 'right, title, and interest in any Innovation relating to Confidential Information arising because of [their] employment with [BD], conceived or made by [them] . . . at any time for a period of one (1) year after employment" (see id. ¶ 51 (alterations in original)

---

analyze certain cellular characteristics," which "are marketed and sold separate and apart from the cytometry machines themselves." (See id. ¶ 20.) In particular, reagents are specifically "designed to be excited by lasers of different wavelengths" and, "[w]hen excited by the intended laser, the reagents fluoresce . . . and provide[] information regarding the cell at issue." (See id.)

[4] The FACSymphony is BD's "highest-end UV cytometer." (See id. ¶ 23.)

[5] The Individual Defendants are "nine former BD employees" who "left BD . . . and joined Cytek." (See id. ¶ 4.)

United States District Court
Northern District of California

1   (emphasis omitted)).

2       Based on the above, Cytek asserts against BD (1) a claim for injunctive relief

3   under California Business and Professions Code § 17200, California's Unfair Competition

4   Law ("UCL") (First Cause of Action); and (2) a claim for declaratory relief under 28 U.S.C.

5   § 2201 (Second Cause of Action).

6                                    **LEGAL STANDARD**

7       Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

8   based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

9   under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

10  699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of

11  the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v.

12  Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a

13  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

14  allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his

15  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

16  of the elements of a cause of action will not do." See id. (internal quotation, citation, and

17  alteration omitted).

18      In analyzing a motion to dismiss, a district court must accept as true all material

19  allegations in the complaint, and construe them in the light most favorable to the

20  nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To

21  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

22  as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

23  662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be

24  enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555.

25  Courts "are not bound to accept as true a legal conclusion couched as a factual

26  allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

27  //

28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**DISCUSSION**

By order filed February 14, 2019, the Court granted BD's motion to dismiss the First Cause of Action as alleged in Cytek's initial Counterclaims ("ICC").  As set forth in said order, the Court found the claim was subject to dismissal because Cytek had not pled sufficient facts to state a claim under the UCL's "unfair" or "unlawful" prongs, and because Cytek had not adequately alleged entitlement to injunctive relief.

By the instant motion, BD seeks an order dismissing the First Cause of Action as alleged in the FACC, by which claim Cytek again asserts it is entitled to injunctive relief based on BD's alleged violations under the "unfair" and "unlawful" prongs of the UCL.

**A.     The "Unfair" Prong**

A violation under the "unfair" prong of the UCL occurs when a competitor engages in "conduct that threatens an incipient violation of antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  See Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 187 (1999).

In asserting BD's conduct falls under the "unfair" prong, Cytek relies on a tying arrangement theory.  In particular, Cytek alleges BD has threatened to "t[ie] . . . the sale of its UV reagents . . . to its customers' refusal to purchase competing Cytek machines" (see FACC ¶ 48), and thereby engaged in conduct that "threatens an incipient violation of" section 3 of the Clayton Act, 15 U.S.C. § 14, as well as the Cartwright Act, specifically, California Business and Professions Code §§ 16720 and 16727 (see id. ¶ 49).

BD argues that, to the extent the First Cause of Action is predicated on Cytek's tying arrangement theory, such claim is again subject to dismissal because Cytek has not pled sufficient facts in support of its tying arrangement theory and has not adequately alleged entitlement to injunctive relief based on its tying arrangement theory.  As discussed below, the Court agrees, and finds dismissal is warranted on both grounds.

//

//

4

United States District Court
Northern District of California

1.     **Failure to Plead Sufficient Facts**

     **a.  Section 3 of the Clayton Act**

     A tying arrangement is "defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier."  See N. Pac. Ry. Co. v. United States, 356 U.S. 1, 5-6 (1958).  "For a tying claim to suffer per se condemnation, a plaintiff must prove:  (1) that the defendant tied together the sale of two distinct products or services; (2) that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market."  See. Rick-Mik Enters., Inc. v. Equilon Enters. LLC, 532 F.3d 963, 971 (9th Cir. 2008) (internal quotation and citation omitted).

     In that regard, the Court previously found Cytek, in its ICC, failed to allege facts sufficient to support a finding that BD had engaged in conduct that "threatened an incipient violation" of section 3 of the Clayton Act.  In particular, the Court found Cytek failed to plead BD's market power in the tying product market, and failed to plead the threatened tie would affect a substantial volume of commerce in the tied product market. As to market power, the Court found, inter alia, the allegations in the ICC did not show BD possessed an adequate share of the tying product market.  As to the volume of commerce affected by the threatened tie, the Court found Cytek had not pled any facts to support a finding that the customer to whom the threatened tie had been directed had any interest in purchasing a Cytek cytometer, or that such purchase would have entailed a substantial sum.

     In an effort to cure the defect in the ICC as to BD's market power, Cytek now identifies a different market as the tying product market.  Specifically, Cytek has changed the tying product market from the "cytometry reagent market in the United States" to the "global market for UV reagents" (compare ICC ¶ 19 with FACC ¶ 47; see also Opp. at 10:19-20 (identifying "relevant" tying product market as "global market for UV reagents")),

as to which, Cytek alleges, BD "owns 100% market share" (see FACC ¶ 22).[6]  The Court

finds the above-referenced allegations adequate to plead BD's market power in the tying

product market.  See Teradata Corp. v. SAPE SE, 2018 WL 6528009, at *11, 15 (N.D.

Cal. Dec. 12, 2018) (finding, where plaintiff alleged defendant held "a dominant position

in the market of about 60% to 90%," such allegation "suffice[d] to plead [defendant's]

market power" for "per se tying claim"); see also Tucker v. Apple Comput., Inc., 493 F.

Supp. 2d 1090, 1097-98 (N.D. Cal. 2006) (finding, where plaintiff alleged defendant

owned 75% of tying product market, plaintiff "alleged sufficient economic power" to state

claim for "per se tying violation").[7]

　　　　Nevertheless, although the above-referenced change in the tying product market

served to cure one inadequately pleaded element, specifically, market power, such

change has created a new problem.  As discussed below, Cytek has not pled sufficient

facts to support a finding that BD directed to any of the customers identified in its FACC a

threat that pertained to UV reagents, and thus has failed to establish a connection

between the alleged threats on which Cytek's tying arrangement theory is based and the

tying product market in which BD possesses market power.

　　　　At the outset, the Court finds Cytek, as to two of the three customers identified in

the FACC, has not adequately alleged BD made any statement threatening a tie.

---

[6] To the extent BD, citing Apple, Inc. v. Psystar Corp., 586 F. Supp. 2d 1190 (N.D. Cal. 2008), and Oracle Am., Inc. v. Cedarstone, Inc., 938 F. Supp. 2d 895 (N.D. Cal. 2013), contends the UV reagent market is "invalid as a matter of law" because such market "is the functional equivalent of a contractually-created aftermarket" (see Mot. at 17:23-24), the Court disagrees.  Specifically, the Court finds the cases on which BD relies in support of such argument are distinguishable because, inter alia, each concerned aftermarket restrictions that were "fully disclosed and expressly agreed upon."  See Psystar, 586 F. Supp. 2d at 1203.

[7] Although BD also argues the UV reagent market is not legally cognizable because "the FACC does not offer any factual allegations to show a lack of cross-elasticity between the products included in and excluded from [said] proposed market" (see Reply at 9:20-21), the argument was raised for the first time in the Reply and, consequently, the Court does not consider it further herein.  As set forth below, however, Cytek will be given leave to amend, and it may wish to address this issue in its amended allegations.

United States District Court
Northern District of California

1    Cytek alleges the second customer identified in the FACC (hereinafter, "Customer

2    2") "reported to Cytek sales personnel that BD was holding hostage a reagent that is

3    available only from BD."  (See FACC ¶ 19.)  Such allegation, however, is ambiguous as

4    to the nature of BD's alleged wrongful conduct, as Cytek does not specify what "ransom"

5    BD demanded in exchange for such reagent, or otherwise plead facts clarifying the

6    condition(s) to which Customer 2 was required to agree.

7    As to the third customer identified in the FACC (hereinafter, "Customer 3"), Cytek

8    alleges said customer "reported to Cytek sales personnel that, despite its interest, it could

9    not engage in the evaluation or purchase of a Cytek Aurora flow cytometer because it

10   feared losing access to necessary BD reagents."  (See FACC ¶ 19.)  Such allegation,

11   however, is unaccompanied by any facts setting forth the source of Customer 3's alleged

12   fear, or otherwise connecting such concern with any wrongful conduct on BD's part.

13   Moreover, although, as to the first customer identified in the FACC (hereinafter,

14   "Customer 1"), Cytek has adequately alleged a threatened tie, namely, a threat to "no

15   longer supply . . . critical reagents for [Customer 1's] BD cytometers" if the customer

16   "purchased an Aurora from Cytek" (see id. ¶ 18), such allegation is ambiguous as to the

17   particular reagent BD threatened to withhold from said customer, and there is nothing in

18   said customer's report as cited in the FACC, nor are there facts alleged elsewhere in the

19   FACC, to support Cytek's allegation that, "[o]n information and belief, the reagents that

20   BD threatened to withhold included reagents designed to interact specifically with UV

21   light" (see id. ¶ 22).

22   Given such deficiency, Cytek likewise has failed to adequately allege it has lost

23   "substantial sales" (see Opp. at 12:20) due to any threat to withhold the sale of UV

24   reagents.  Moreover, although Cytek has adequately alleged that Customers 2 and 3 had

25   an interest in purchasing a cytometer from Cytek (see FACC ¶ 19 (alleging Customer 2

26   was "in discussions for the purchase of a Cytek Aurora" and Customer 3 expressed

27   "interest" in purchasing an Aurora)), and that such customers "represent a potential loss

28   of more than $300,000 in Aurora sales" (see id.), Cytek has not, as discussed above,

7

pled sufficient facts to establish either Customer 2 or Customer 3 received from BD any

threat to tie, and Cytek, once again, has not pled any facts to support an inference that

Customer 1 had an interest in purchasing a cytometer from Cytek or that such purchase

would have entailed a not insubstantial sum.

b.      The Cartwright Act

"A tying arrangement may be condemned under either or both section 16720 and

section 16727" of the California Business and Professions Code.  Morrison v. Viacom

Inc., 66 Cal. App. 4th 534, 541 (1998).  To establish a "per se tying arrangement violative

of section 16720," the following elements must be met:

> (1) a tying agreement, arrangement or condition whereby the sale of the
> tying product was linked to the sale of the tied product or service; (2) the
> party had sufficient economic power in the tying market to coerce the
> purchase of the tied product; (3) a substantial amount of sale was affected
> in the tied product; and (4) the complaining party sustained pecuniary loss
> as a consequence of the unlawful act.

See id. at 541-42.  "Under section 16727, a per se violation is established if either

element (2) or (3) is established along with elements (1) and (4)."  See id. at 542

(emphasis in original).[8]

Here, as discussed above, although Cytek has adequately alleged BD possesses

"sufficient economic power" in the UV reagent market, the FACC lacks sufficient facts to

support an inference that BD has threatened to condition the sale of its UV reagents on

its customers' refusal to purchase a cytometer from Cytek, or that Cytek has lost a

substantial amount of sales due to any threatened ties on BD's part.

2.      Entitlement to Injunctive Relief

Under California law, courts may award injunctive relief "as may be necessary to

prevent the use or employment . . . of any practice which constitutes unfair competition."

---

[8] Contrary to BD's argument, the Supreme Court, in Illinois Tool Works Inc. v.
Independent Ink, Inc., 547 U.S. 28, 31 (2006), did not overrule the cases on which
Morrison relied in setting forth the elements of a per se tying claim under section 16727,
and BD has not cited, nor has the Court located, any authority citing Illinois Tool Works
for such proposition.

United States District Court
Northern District of California

1  See Cal. Bus. & Prof. Code § 17203.  Injunctive relief under § 17203, however, "cannot

2  be used . . . to enjoin an event which has already transpired; a showing of threatened or

3  future harm or continuing violation is required."  See People v. Toomey, 157 Cal. App. 3d

4  1, 20 (1984); see also Madrid v. Perot Sys. Corp., 130 Cal. App. 4th 440, 464 (2005)

5  (acknowledging "the general rule is that an injunction may not issue unless the alleged

6  misconduct is ongoing or likely to recur").

7        BD contends Cytek has not adequately alleged it is entitled to injunctive relief

8  based on its tying arrangement theory because "the FACC . . . does not allege any facts

9  to support [a finding that] there is tying conduct that is likely to recur, or that there is any

10  continuing harm flowing from BD's past alleged misconduct."  (See Reply at 3:23-25.)  As

11  discussed below, the Court agrees.

12        First, contrary to Cytek's argument, the FACC lacks sufficient facts to support a

13  finding that "BD's wrongful conduct is continuing and is likely to recur" (see Opp. at

14  18:20-21).  In particular, even assuming, arguendo, Customers 2 and 3 had been

15  subjected to threats "similar" to that which was made to Customer 1 in 2017 (see FACC

16  ¶¶ 18-19), Cytek's allegations are silent as to the timing of BD's threats to Customers 2

17  and 3, and thus provide no basis for an inference that any threats were made after the

18  one remark in 2017, let alone that BD, at present, continues to subject customers to such

19  threats and is likely to is likely to make additional threats in the future.

20        Moreover, and again contrary to Cytek's argument, Cytek has not pled sufficient

21  facts to support a finding that it continues to suffer harm from "the ongoing effects and

22  consequences of BD's past misconduct" (see Opp. at 20:1).  Specifically, while Cytek

23  alleges "BD has not withdrawn the threats . . . that it made" (see FACC ¶ 55), Cytek has

24  not pled any facts demonstrating that, to date, either of the customers who previously

25  exhibited an interest in purchasing an Aurora remain interested in making such a

26  purchase and, consequently, has not adequately alleged that BD's purported threats in

27  the past have continued to deprive Cytek of potential sales and inflict harm on Cytek.

28  //

9

### 3.     Conclusion as to "Unfair" Prong

For the reasons discussed above, to the extent the First Cause of Action is premised on Cytek's tying arrangement theory, such claim is subject to dismissal.

## B.     The "Unlawful" Prong

Under the "unlawful" prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  See Cel-Tech, 20 Cal. 4th at 180 (internal quotation and citation omitted).

In the First Cause of Action, Cytek asserts BD has engaged in conduct that falls under the UCL's "unlawful" prong by "requiring its employees – including certain Individual Defendants – to enter into employee agreements that are illegal under California Business & Professions Code § 16600" (see FACC ¶ 51) (hereinafter, "employee agreement theory").

BD argues that, to the extent the First Cause of Action is predicated on Cytek's employee agreement theory, such claim is subject to dismissal because Cytek has not adequately alleged entitlement to injunctive relief based thereon.  The Court agrees.

As BD points out, although Cytek alleges BD "has not conceded that its holdover clause is void under California law and has preserved the right to enforce [such] provision as to the Individual Defendants and all other employees in California in the future" (see FACC ¶ 53), such allegation does not support a finding that Cytek is entitled to injunctive relief, as Cytek has not pled sufficient facts to demonstrate how Cytek itself faces "future harm" due to the prospect of BD's asserting against other individuals claims based on the holdover provisions.  See Toomey, 157 Cal. App. 3d at 20; cf. AMN Healthcare Inc. v. Aya Healthcare Servs., Inc., 28 Cal. App. 5th 923, 599-600 (2018) (holding trial court did not abuse discretion in "enjoining [plaintiff] from attempting to enforce [non-compete clause] against" all of plaintiff's former employees, including non-parties, where evidence demonstrated plaintiff's continued efforts to preclude non-party employees from seeking employment with defendant).

Accordingly, to the extent the First Cause of Action is predicated on Cytek's

1  employee agreement theory, such claim is subject to dismissal.

2  **C.      Leave to Amend**

3           Cytek argues that, in the event "any portion" of its First Cause of Action is

4  dismissed (see Opp. at 21:15), it should be given leave to amend because it "has now

5  become aware of new acts of unfair competition that BD committed after Cytek filed its

6  amended counterclaims" (see id. at 21:20-21 (emphasis omitted)).  While Cytek has not

7  identified with specificity the additional facts it would plead to show BD "recent[ly]"

8  engaged in "additional . . . acts of misconduct" (see id. at 21:21), or offered any

9  explanation as to how such additional facts will "provide further support of harm to Cytek

10 and recurrence of BD's misconduct" (see id. 21:22), the Court nonetheless will grant

11 Cytek an opportunity to amend its First Cause of Action to cure the deficiencies identified

12 above.

**CONCLUSION**

14           For the reasons set forth above, BD's motion is hereby GRANTED and Cytek's

15 First Cause of Action is hereby DISMISSED with leave to amend.  Cytek's Second

16 Amended Counterclaims, if any, shall be filed no later than August 7, 2019.

17           **IT IS SO ORDERED.**

18

19 Dated:  July 17, 2019

20                                                    MAXINE M. CHESNEY
                                                      United States District Judge

21

22

23

24

25

26

27

28