IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES INC., et al.,<br><br>Defendants. | Case No. 18-cv-00933-MMC<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS**<br><br>Re: Dkt. No. 139 |

Before the Court is plaintiff/counterdefendant Becton, Dickinson and Company's ("BD") motion, filed September 5, 2019, to strike and/or dismiss the first and second causes of action asserted against it in defendant/counterclaimant Cytek Biosciences, Inc.'s ("Cytek") Second Amended Counterclaims ("SACC"). Cytek has filed opposition, to which BD has replied.

Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

Becton is a "medical technology company" that "manufactures and sells a broad range of medical supplies, devices, laboratory equipment, and diagnostic products" (see Compl. ¶ 8), including flow cytometers (see id. ¶ 36).[2] Cytek is a company that

---

[1] By order filed November 5, 2019, the Court took the motion under submission.

[2] "A flow cytometer suspends cells with fluorescent labels ('dyes') in a stream of fluid and passes them individually past one or more lasers and optical detection circuitry[;] [t]he resulting fluorescence is detected and measured to determine various properties of the cells, which can in turn provide critical information about human diseases and health." (See id. ¶ 37.)

"service[s] and customize[s] BD flow cytometers" and "began selling . . . the Aurora™ line of spectral flow cytometers" in June 2017. (See id. ¶ 4.)

On February 13, 2018, BD filed its initial complaint in the instant action, alleging "Cytek used BD's confidential, proprietary, and trade secret information as part of its effort to develop" the Aurora (see id. ¶ 141). Subsequently, after the Court ruled on motions to dismiss, BD filed its operative complaint.

Thereafter, on September 7, 2018, Cytek filed its initial answer and counterclaims, asserting a cause of action for injunctive relief under California's Unfair Competition Law ("UCL"), see Cal. Bus. & Prof. Code § 17200, based on allegations that BD had (1) attempted to "[tie] . . . the sale of" certain products used in flow cytometers "to its customers' refusal to purchase competing Cytek machines," in violation of Federal and State antitrust law, namely the Clayton Act and the Cartwright Act (see Counterclaims ¶ 45) ("tying arrangement theory"), (2) falsely stated to potential customers "that Cytek's Aurora technology is 'stolen' from BD" (see id. ¶ 45) ("false statement theory"), and (3) required its employees to enter into illegal "holdover provision[s]" that required former employees to assign to BD their interest in inventions conceived "because of their employment with BD" (see id. ¶¶ 51, 52) ("employee agreement theory"). BD then filed a motion to dismiss, which motion the Court granted, finding, as to the first two theories, Cytek had not pled sufficient facts to state an antitrust or defamation claim, and, as to all three theories, Cytek had not adequately alleged entitlement to injunctive relief.[3] By the same order, the Court afforded Cytek leave to amend.

On March 7, 2019, Cytek filed its First Amended Counterclaims ("FACC"), this time basing its UCL claim only on its tying arrangement and employee agreement theories. BD again moved to dismiss Cytek's UCL claim, and the Court granted BD's motion,

---

[3] In its initial answer and counterclaims, Cytek also asserted a cause of action under 28 U.S.C. § 2201, seeking a declaration that the "holdover provisions in BD's employee agreements" are "void and unenforceable." (See id. ¶ 64). BD has never challenged Cytek's cause of action for declaratory relief.

2

1  finding Cytek had again failed to plead sufficient facts to support those theories or
2  entitlement to injunctive relief. Nevertheless, based on Cytek's assertion that it had
3  "become aware of new acts of unfair competition that BD committed <u>after</u> Cytek filed its
4  amended counterclaims" (<u>see</u> Opp., filed May 15, 2019, at 21:20-21) (emphasis in
5  original), the Court granted Cytek a further opportunity to amend, "to cure the
6  deficiencies" the Court had identified (<u>see</u> Order, filed July 17, 2019, at 11:11).

On August 7, 2019, Cytek filed its Second Amended Counterclaims ("SACC"), by which it asserts, for the first time, a claim for injunctive relief and treble damages under Section 2 of the Sherman Antitrust Act, 15 U.S.C . § 2, as well as a UCL claim based thereon, both predicated on a new theory that, "starting in or around the fall of 2017" (<u>see</u> SACC ¶ 29), BD has refused to sell Cytek parts necessary for Cytek to service BD cytometers ("Sherman Act Claim").[4]

**DISCUSSION**

By the instant motion, BD seeks an order striking and/or dismissing Cytek's Sherman Act Claim, as well as its UCL claim to the extent based thereon, on the grounds that, <u>inter alia</u>, those claims were added without the Court's permission, and that, if Cytek had sought leave to amend to allege those claims, such leave would have been denied for the reason that Cytek unduly delayed in asserting them. As set forth below, the Court agrees.

First, Cytek's amendments exceed the scope of amendment permitted in the Court's order dismissing the FACC. By said order, Cytek was only afforded leave to amend its UCL claim and only to "cure the deficiencies identified" by the Court's order. (<u>See</u> Order, filed July 17, 2019, at 11:11.) The Court did not grant Cytek permission to add any other causes of action. Cytek, however, now asserts an entirely new claim and

---

[4] In addition to basing its UCL claim on an alleged violation of the Sherman Act, Cytek, in an effort to "preserve its right to appeal" (<u>see</u> SACC at 19:26), has realleged, in support of its UCL claim, and without alteration, violations based on the above-referenced tying arrangement and employee agreement.

3

in no manner endeavors to cure the deficiencies in its previously asserted UCL claim. Most importantly, the limited opportunity afforded Cytek was, as noted above, based on Cytek's assertion that it had "become aware of new acts of unfair competition that BD committed <u>after</u> Cytek filed its amended counterclaims" (<u>see</u> Opp., filed May 15, 2019, at 21:20-21) (emphasis in original), and, as further noted, Cytek's new claim is based on conduct that allegedly began "in or around the fall of 2017" (<u>see</u> SACC ¶ 29), long before Cytek filed its FACC.

Given the above circumstances, Cytek does not argue its new claim is within the scope of amendment permitted by the Court; rather, relying on Rule 15 of the Federal Rules of Civil Procedure, Cytek argues it nonetheless should be allowed to allege it.

Cytek's reliance on Rule 15 is, however, misplaced. In particular, where the Court has issued a pretrial scheduling order containing a deadline to amend the pleadings, a motion to amend is governed by Rule 16 of the Federal Rules of Civil Procedure. <u>See</u> <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 607–608 (9th Cir.1992) (noting, "[o]nce the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings[,] that rule's standards controlled"). In the instant case, the Court issued its pretrial scheduling order on August 21, 2018, by which order the Court set February 28, 2019, as the deadline for amendment of the pleadings.[5] Consequently, Rule 16, rather than Rule 15, controls. <u>See</u> <u>id.</u>

Under Rule 16, a pretrial "schedule may be modified only for good cause." <u>See</u> Fed. R. Civ. P. 16(b)(4). To show good cause, a party moving under Rule 16 must show it acted with "diligence" in "seeking the amendment." <u>See</u> <u>Johnson</u>, 975 F.2d at 609. Here, BD argues, Cytek acted with "undue delay" in seeking to add its Sherman Act Claims (<u>see</u> Mot., filed Sept. 5, 2019, at 10:12),[6] as Cytek had known the factual basis for

---

[5] On August 23, 2018, an amended pretrial order was filed, the only change therein being an extension of the deadline to complete non-expert discovery.

[6] Although BD, relying on Rule 15, argues a party seeking leave to amend may not

4

1  such claims for almost two years before asserting them. In response, Cytek argues it
2  could not have asserted such a claim earlier because it had not "ripened" until April 2019
3  (see Opp. at 10:15), when "Cytek was forced to conclude that it must cease offering new
4  . . . service contracts [for BD cytometry instruments] in January 2020." (See SACC ¶ 34.)
5  In particular, according to Cytek, until such decision was made, it could not plead the
6  "harm to competition" (see Opp. at 13: 9-10) necessary for a showing of antitrust injury.
7  As set forth below, Cytek's argument is not persuasive.

Although harm to competition is a necessary element of an antitrust claim, see McGlinchy v. Shell Chem. Co., 845 F.2d 802, 815 (9th Cir. 1988) (holding, to plead claim under Section 2 of Sherman Act, plaintiff must allege "antitrust injury to competition"), Cytek cites no authority for the proposition that a competitor, in order to show such harm, must first go out of business. Moreover, existing authority would appear to hold to the contrary. See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 n.14 (1977) (noting "competitors" seeking damages for antitrust violation can prove antitrust injury "before they actually are driven from the market and competition is thereby lessened"). Indeed, in Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585 (1985), the primary authority upon which Cytek relies to support a Sherman Act claim for refusal to deal, the plaintiff, who had brought such a claim, was still in business, see id. at 594-95, and the Ninth Circuit has held "a competitor of an alleged attempted monopolist had standing where it was either driven out of business or suffered reduced profits because of the alleged anticompetitive acts of the attempted monopolist," see Amarel v. Connell, 102 F.3d 1494, 1509 (9th Cir. 1996), as amended (Jan. 15, 1997) (emphasis added); (see also SACC ¶ 33 (alleging BD's refusal to supply Cytek with replacement parts "significantly increased" Cytek's costs and made it "increasingly difficult for Cytek to

---

act with "undue delay," see Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing undue delay as factor weighing against leave to amend under Rule 15), the basis for the instant challenge, whether characterized as undue delay or lack of diligence, is essentially the same.

5

fulfill its obligations under customers' service contracts.")).

In any event, even if Cytek were correct as to when its Sherman Act Claim became actionable, Cytek nevertheless has failed to show it was diligent in bringing such claim. In particular, even assuming Cytek's Sherman Act Claim was not "ripe" until April 2019, Cytek waited four months before asserting it or otherwise bringing it to the Court's attention, despite having requested leave to amend its counterclaims on other bases. See, e.g., In re Rocket Fuel Inc. Sec. Litig., No. 14-CV-03998-PJH, 2017 WL 344983, at *4 (N.D. Cal. Jan. 24, 2017) (finding plaintiffs "ha[d] not shown diligence in timely pursuing amendment" where they failed to "move for leave to amend until four months" after receiving new information upon which their request to amend was based); see also Johnson, 975 F.2d at 610 ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril"; noting importance of "court's ability to control its docket") (internal quotation omitted).

Lastly, Cytek, again relying on Rule 15, argues BD has failed to show it would be prejudiced if the amendment were allowed. As noted, however, Cytek's reliance on Rule 15 is misplaced. "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." See Johnson, 975 F.2d at 609 (quoting advisory committee's notes (1983 amendment)). Consequently, under Rule 16, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, . . . [i]f the [moving party] was not diligent, the inquiry should end." See id.

Accordingly, as Cytek has failed to make the requisite showing of diligence, Cytek has failed to make the requisite showing of good cause.

//

//

//

**CONCLUSION**

For the reasons stated above, BD's motion is hereby GRANTED as follows:

The First Cause of Action (Sherman Act), as well as the Second Cause of Action (UCL) to the extent based thereon, are hereby STRICKEN without prejudice to re-filing in a separate action, and the remainder of the Second Cause of Action is hereby DISMISSED without leave to amend.

**IT IS SO ORDERED.**

Dated: November 26, 2019

MAXINE M. CHESNEY
United States District Judge