1  James R. Batchelder (CSB # 136347)     Peter M. Brody (*pro hac vice*)
   David S. Chun (CSB # 315958)           ROPES & GRAY LLP
2  ROPES & GRAY LLP                       2099 Pennsylvania Ave. NW
   1900 University Ave. Sixth Floor       Washington, DC 20006–6807
3  East Palo Alto, CA 94303–2284          Tel: (202) 508–4600
   Tel: (650) 617–4000                    Fax: (202) 508–4650
4  Fax: (650) 617–4090                    peter.brody@ropesgray.com
   james.batchelder@ropesgray.com
5  david.chun@ropesgray.com               *Attorneys for Plaintiff*
                                          *BECTON, DICKINSON AND COMPANY*
6
7  Mark S. Popofsky (CSB # 175476)
   Anne Johnson Palmer (CSB # 302235)
8  ROPES & GRAY LLP
   Three Embarcadero Center
9  San Francisco, CA 94111–4006
   Tel: (415) 315–6300
10 Fax: (415) 315–6350
   mark.popofsky@ropesgray.com
11 anne.johnsonpalmer@ropesgray.com

12                  **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                    **SAN FRANCISCO DIVISION**

15 BECTON, DICKINSON AND COMPANY,    )  C.A. No. 3:18-cv-00933-MMC
                                     )
16            Plaintiff,             )  **THIRD AMENDED COMPLAINT**
                                     )
17        v.                         )  1. **VIOLATION OF DEFEND TRADE**
                                     )     **SECRETS ACT**
18 CYTEK BIOSCIENCES INC., MING YAN, )  2. **AIDING AND ABETTING**
   ALFRED RILEY, DAVID VRANE,        )     **VIOLATION OF THE DEFEND**
19 ZHENYU ZHANG, ZHENXIANG GONG,     )     **TRADE SECRETS ACT**
   ALEX ZHONG, MARIA JAIMES, GIL     )  3. **VIOLATION OF CALIFORNIA**
20 REININ, and JANELLE SHOOK,        )     **UNIFORM TRADE SECRET ACT**
                                     )  4. **BREACH OF CONTRACT**
21            Defendants.            )     **(AGAINST ALL DEFENDANTS)**
                                     )  5. **BREACH OF CONTRACT**
22                                   )     **(AGAINST CYTEK)**
                                     )  6. **VIOLATION OF CAL. BUS &**
23                                   )     **PROF. CODE SECTION 17200**
                                     )  7. **COPYRIGHT INFRINGEMENT**
24                                   )
                                     )  **DEMAND FOR JURY TRIAL**
25                                   )
                                     )
26                                   )
                                     )
27 ──────────────────────────────────)

28

1    This is a civil action by Plaintiff Becton, Dickinson and Company ("BD," or "Plaintiff"), by
2  and through their attorneys, arising out of unfair competition and the misappropriation of BD's
3  property, including confidential, proprietary, and trade secret information, by Cytek Biosciences Inc.
4  ("Cytek") and former BD employees Ming Yan ("Yan"), Alfred Riley ("Riley"), David Vrane
5  ("Vrane"), Zhenyu Zhang ("Zhang"), Zhenxiang Gong ("Gong"), Alex Zhong ("Zhong"), Maria
6  Jaimes ("Jaimes"), Gil Reinin ("Reinin"), and Janelle Shook ("Shook"), as well as Cytek's
7  infringement of certain of BD's registered, copyrighted works, and its breach of license agreements
8  related to certain of those works.  Plaintiff hereby alleges as follows upon information and belief:

9    This lawsuit arises from the theft of BD's secret technical specifications, source code, and
10 designs related to the field of flow cytometry, as well as the unauthorized copying, reproduction, and
11 distribution of, and the unauthorized preparation of derivative works based on, certain copyrighted
12 materials authored and owned by BD—namely, software products and documentation for those and
13 other products involving the field of flow cytometry—and the breach of license agreements relating
14 to those software products.

15   Formerly a small company that serviced BD products, Cytek hired away nearly a dozen
16 scientists, engineers, and businesspeople from BD and employed them to develop products that
17 compete unfairly with their former company's product lines.  When they left BD to work for Cytek
18 and thereafter, those employees, upon information and belief, improperly took, retained, and misused
19 BD's valuable, highly confidential, proprietary information and copyrighted content, including
20 thousands of confidential and valuable technical files that they had downloaded from BD's computer
21 systems onto removable storage media while employed by BD.  Despite BD's diligent efforts to
22 recover those devices and files, and its inquiries to Cytek and the former employees—indeed, BD
23 gave Cytek a list of serial numbers of the unrecovered storage media known to have been used by
24 the employees—the vast majority of the storage devices and files have not been recovered.  Cytek
25 has not disclosed the extent to which it and its employees have or have shared BD's confidential
26 information and copyrighted works, and how any such information or works have been used, forcing
27 BD to file this case to safeguard its trade secrets, copyright rights, and other valuable property.

28

**NATURE OF THE ACTION**

1.      BD is a world-renowned medical technology company founded in 1897 that serves healthcare institutions, life science researchers, clinical laboratories, industry, and the general public. With more than a century of experience, BD manufactures and sells a broad range of medical supplies, devices, laboratory equipment, and diagnostic products to enable medical research and assist clinical laboratories.   Research, development, and innovation for new technologies and products are at the core of BD's mission and corporate identity and are critical to BD's competitive advantages in the marketplace.   Among other products, the BD Biosciences business unit of the company has for decades researched, developed, and produced flow cytometers.  These complex and sophisticated instruments, the fruit of years of research and development ("R&D"), use lasers to count and detect the properties of human cells, assisting research and clinical practice.

2.      In roughly 2012, BD started development on a spectral flow cytometer, a new type of flow cytometer that analyzes the light detected by a flow cytometer differently to optimize sensitivity and flexibility.  This project was known internally as "Project Newton."  Defendant Yan headed up Project Newton, dedicating to it the majority of his time over approximately two years.  Defendants Yan, Riley, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook (the "Individual Defendants") worked on Project Newton and/or other confidential flow cytometer products.   Their collective exposure to BD's confidential information spanned the areas of physics, chemistry, biology, fluidics, optics, electrical engineering, and computer science, as well as BD's marketing, finances, and competitive strategy.   Each of these former BD employees had access to BD's confidential information related to Project Newton, and numerous other trade secrets and copyrighted BD works involving flow cytometry.

3.      Formed in the early 1990s, Cytek is a small company that had not produced flow cytometers of its own, but rather serviced and customized BD flow cytometers.  Starting in 2014, Cytek began hiring current and former BD employees for the purposes of developing flow cytometers, including each of the Individual Defendants.  In particular, after BD prioritized other products over Project Newton, Yan left BD and joined Cytek as its Chief Technology Officer.  Cytek and Yan then proceeded to recruit other Individual Defendants to join Cytek, each of whom had

worked on flow cytometers at BD.  In March 2017, less than two years after it began hiring this group of BD employees, Cytek—which for two decades had never developed or sold a flow cytometer—began selling its own flow cytometer products under the Athena™ name.  In June 2017, Cytek introduced the Aurora™ line of spectral flow cytometers.  Cytek has said that its products would compete against BD products, among others, in the United States and worldwide.

4.       Before leaving BD, each of the Individual Defendants downloaded proprietary BD files to removable storage media devices.  BD's own forensic analysis revealed that these devices contained thousands of BD files, with confidential, trade secret information about the hardware and software of BD's designs, including Project Newton.  Only a handful of these removable storage drives have been found after diligent efforts to locate them.  From the day each employee joins the company, BD expressly warns its associates not to take confidential information if and when they leave BD and *never* to give it to, or use it for the benefit of, unaffiliated third parties.  BD's employee agreements, training, annual certifications, and other forms instruct employees to maintain the confidentiality of sensitive company information.  Upon information and belief, each of the Individual Defendants, having taken these removable storage media devices from BD, brought them to Cytek along with the BD proprietary, confidential, and trade secret information they contained.

5.       The Individual Defendants improperly downloaded, removed from BD's premises, took to Cytek, and failed to return thousands of files with BD's valuable, highly confidential, proprietary information and copyrighted content before departing to Cytek, which then immediately launched its own cytometers and substantially similar products within a shortened time frame—a feat that was aided by Cytek's improper access to and misuse of BD's confidential, proprietary information and copyrighted content.  Those former employees had years—sometimes decades—of access to BD's proprietary product designs, software, manuals, and research data in flow cytometry. Judicial intervention is required to hold Cytek and the Individual Defendants responsible for this theft of BD's critical trade secrets, for their unfair acts designed to harm BD's R&D efforts and induce the Individual Defendants to breach their contractual obligations to BD, and to prevent Cytek from continuing its development and sale of competing products and unauthorized service, repair, and upgrade of BD products, through wrongful, improper, and illegal means, as well as to hold Cytek

1   responsible for its unauthorized copying, reproduction, and distribution of, and its unauthorized

2   preparation of derivative works based on, BD's registered, copyrighted works, and the breach of

3   BD's software license agreements.

4                                        **PARTIES**

5          6.      BD is a corporation duly organized under the laws of the State of New Jersey, and

6   maintains its principal place of business at 1 Becton Drive, Franklin Lakes, New Jersey 07417.

7          7.      BD is a medical technology company that serves healthcare institutions, life science

8   researchers, clinical laboratories, industry, and the general public.  BD manufactures and sells a broad

9   range of medical supplies, devices, laboratory equipment, and diagnostic products.  BD has offices

10  in approximately 50 countries worldwide.

11         8.      Defendant Cytek Biosciences Inc. is a Delaware corporation with its principal place

12  of business located at 46107 Landing Pkwy, Fremont, California 94538.

13         9.      Cytek manufactures components for its flow cytometer products in China.

14         10.     Yan is an individual currently residing in the State of California, whose last known

15  address is 2809 Elsnab Court, Pleasanton, California 94588.  BD employed Yan from approximately

16  January 23, 2006 until his departure on January 16, 2015.

17         11.     Cytek hired Yan shortly after his departure from BD, and Yan is presently employed

18  as Cytek's Chief Technology Officer.

19         12.     Riley is an individual currently residing in the State of California, whose last known

20  address is 2296 Sunny Vista Drive, San Jose, California 95128.   BD employed Riley from

21  approximately June 1988 until his departure on January 10, 2015.

22         13.     Cytek hired Riley in or about February 2016, and Riley is presently employed at

23  Cytek as a General Manager.

24         14.     Vrane is an individual currently residing in the State of California, whose last known

25  address is 880 Nevada Avenue, San Jose, California 95125.   BD employed Vrane from

26  approximately October 20, 1998 until his departure on April 20, 2015.

27         15.     Vrane is presently employed at Cytek as a Staff Specialist: Fluid Dynamics.

28

**THIRD AMENDED COMPLAINT**                                    **CASE NO. 3:18-cv-00933-MMC**

16.     Zhang is an individual currently residing in the State of California, whose last known address is 3836 Dunford Way, Santa Clara, California 95051.   BD employed Zhang from approximately January 3, 2005 until his departure on April 25, 2015.

17.     Cytek hired Zhang in 2016, and Zhang is presently employed by Cytek as a software developer.

18.     Gong is an individual currently residing in the State of California, whose last known address is 3234 Silverland Drive, San Jose, California 95135.   BD employed Gong from approximately June 5, 2000 until his departure in May 2015.

19.     Cytek hired Gong in or about May 2015, and Gong is presently employed by Cytek as Director of Software Development.

20.     Zhong is an individual currently residing in the State of California, whose last known address is 501 Manhattan Place, San Jose, California 95136.   BD employed Zhong from approximately March 28, 2011 until his departure on January 18, 2016.

21.     Cytek hired Zhong in or about January 2016, and Zhong is presently employed by Cytek as its China Business Manager.

22.     Jaimes is an individual currently residing in the State of California, whose last known address is 1335 Montecito Ave., Apt. 18, Mountain View, California 94043.  BD employed Jaimes from approximately 2005 until her departure on April 30, 2015.

23.     Cytek hired Jaimes in or about July 2015, and Jaimes is presently employed by Cytek as an application specialist.

24.     Reinin is an individual currently residing in the State of California, whose last known address is 41 Dorchester Drive, Mountain View, California 94043.   BD employed Reinin from approximately October 15, 2007 until his departure on June 13, 2016.

25.     Cytek hired Reinin in or about July 2016, and Reinin is presently employed as Cytek's Director of Marketing.

26.     Shook is an individual currently residing in the State of California, whose last known address is 985 Vicar Lane, San Jose, California 95117.  BD employed Shook from approximately October 17, 2011 until her departure on October 18, 2016.

1   27.    Cytek hired Shook in or about November 2016, and Shook is presently employed by

2   Cytek as a Systems Engineer.

3   **JURISDICTION AND VENUE**

4   28.    Jurisdiction is based upon 28 U.S.C. § 1332(a)(2) in that there is complete diversity

5   of citizenship between the parties and the amount in controversy exceeds $75,000.00.

6   29.    Jurisdiction is also based on 28 U.S.C. § 1331 and 1338, BD's claims under 18 U.S.C.

7   §§ 1836-39, *et seq.*, for misappropriation of trade secrets under the Defend Trade Secrets Act, and

8   BD's claims under 17 U.S.C. § 501 *et seq.* for copyright infringement.

9   30.    This Court has supplemental jurisdiction pursuant to 28 U.S.C § 1367 over all other

10  claims that do not arise under the Constitution, laws, or treaties of the United States because they

11  involve a common nucleus of operative fact.

12  31.    Venue is proper within this district because, as set forth above, all Defendants reside

13  in this Judicial District.  In addition, a substantial part of the events or omissions giving rise to the

14  claims alleged in this Complaint occurred in this Judicial District.  Venue is therefore proper in the

15  United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1)

16  and (2).

17  **FACTUAL ALLEGATIONS**

18  **A.    BD And Its Products and Services**

19  32.    Founded in 1897 and headquartered in Franklin Lakes, New Jersey, BD employs

20  more than 65,000 associates in approximately 50 countries throughout the world.  BD is among the

21  world's leading suppliers of medical devices and is a leading innovator in injection- and infusion-

22  based drug delivery, and has been since 1906, when the Company built the first-ever facility in the

23  U.S. to manufacture needles and syringes.

24  33.    BD, with its overarching vision to improve outcomes for patients, focuses its business

25  on improving drug delivery, enhancing the quality and speed of diagnosing infectious diseases and

26  cancers, and advancing research, discovery, and production of new drugs and vaccines.  BD's

27  capabilities are instrumental in combating many of the world's most pressing diseases by identifying

28  and developing next-generation *in vitro* diagnostic technologies for settings ranging from hospital

1   clinical labs to fields with minimal healthcare infrastructure.  As part of its development efforts, BD

2   broadly looks at novel sample processing and detection technologies that help speed results, reduce

3   cost, increase accuracy, and provide new types of clinically actionable information.  BD serves

4   healthcare institutions, life science researchers, clinical laboratories, the pharmaceutical industry,

5   and the general public.  Homegrown innovation has been critical to BD's innovation and competitive

6   advantages.

7       34.     Through its BD Biosciences ("BDB") business unit, BD provides continuous

8   advancement in the science and applications associated with cellular analysis and products that help

9   grow living cells and tissue.  Among other products, BDB focuses on research, development, and

10  production of flow cytometers, a highly-specialized medical technology explained in detail below.

11  BDB employs approximately 1,100 associates in its San Jose location (the "San Jose Facility"),

12  which has primary responsibility for R&D, marketing, sales, finance, and customer service for flow

13  cytometers, including but not limited to instruments, reagents, cell culture, and applications.

14      35.     Development of new flow cytometers often requires years of R&D and hundreds of

15  thousands or millions of dollars.  Flow cytometry involves multiple scientific disciplines, including

16  physics, chemistry, biology, fluidics, optics, electrical engineering, and computer science.

17  Throughout the R&D and commercialization process for BD products, BD authors and produces

18  copyrighted works, including software, product manuals, specification sheets, and other associated

19  documentation.

20      36.     BD currently makes and sells multiple lines of flow cytometers and associated

21  products.  These include the BD LSRFortessa, BD FACScan, BD FACSCanto, BD FACSVerse, BD

22  FACSAria, BD FACSLyric, BD Accuri, BD FACSCelesta, and BD FACSymphony lines of flow

23  cytometers.  BD also is the author and owner of all copyright rights in the software used by those

24  flow cytometers, including its FACSDiva and FACStation software, and the manuals and other

25  documentation for its products and their software.

26      **B.**    **Flow Cytometry**

27      37.     Flow cytometry is a laser-based, biophysical technology that is employed in cell

28  counting, cell   sorting, biomarker detection,   and protein   engineering.      A   flow   cytometer

suspends cells with fluorescent labels ("dyes") in a stream of fluid and passes them individually past one or more lasers and optical detection circuitry.  The resulting fluorescence is detected and measured to determine various properties of the cells, which can in turn provide critical information about human diseases and health.

38.   Flow cytometry is widely used for medical diagnoses, research, clinical practice, and clinical trials.  It has been used successfully to diagnose, classify, and evaluate the risk of recurrence of certain cancers, including certain cancers in the blood, such as leukemia, and has also been used in stem cell transplantation.  Flow cytometry is a powerful research tool used for a wide variety of research purposes including cancer research, immune function research, and other forms of cellular analysis.

39.   The properties measured in flow cytometry include the relative size of a particle, as well as its relative granularity or internal complexity, and relative fluorescence intensity.  These characteristics are determined using an optical-to-electronic coupling system that records how the cell or particle scatters incident laser light and emits fluorescence.

40.   The first fluorescence-based flow cytometry device was developed in 1968, and in 1974, BD introduced the first commercial flow cytometer.  BD has received significant industry praise for its excellence in the flow cytometry space, including Life Science Industry Awards for Best New Product in Cellular Research and similar awards in multiple years, as well as over 100 U.S. patents related to flow cytometry.

41.   In addition to its patent portfolio, BD possesses confidential, non-public, trade secret information related to flow cytometry.  BD's policy is to seek patents on patentable technologies that are publicly disclosed or readily ascertainable through proper means from the products it sells, while retaining as trade secrets the valuable technology and information that would remain secret because it would not be publicly disclosed or readily ascertainable by proper means in a BD product.

42.   Development of new flow cytometers often requires years of R&D and hundreds of thousands or millions of dollars.  Flow cytometry involves multiple scientific disciplines, including physics, chemistry, biology, fluidics, optics, electrical engineering, and computer science.

43.     A flow cytometer includes four main systems: fluidics, optics, electronics, and software.

44.     The fluidics system of a flow cytometer is responsible for transporting the sample from the sample tube to the flow cell surrounded by sheath fluid, which centers the cells in the flow cell and past the laser and detector.

45.     The optics system consists of lasers to illuminate the particles in the sample stream and optical filters to direct the resulting light signals to the appropriate detectors.

46.     The electronics system converts the detected light signals into electronic signals that can be processed by a computer.

47.     The software systems include algorithms for setting up a flow cytometer and for processing and interpreting the resulting data.  This includes algorithms related to panel design, which involves the proper choice of special dyes to produce reliable data.

48.     In a flow cytometer, when cells pass through the laser intercepts, they scatter laser light and any fluorescent molecules on the cells fluoresce.  The scattered and fluorescent light is then collected by appropriately positioned lenses.  A combination of beam splitters and filters steers the scattered and fluorescent light to the appropriate detectors, and the detectors produce electronic signals proportional to the optical signals striking them.  Data are collected on each particle or event, and stored in the computer.  The characteristics or parameters of each event are based on its light scattering and fluorescent properties.  This data can then be analyzed to provide information about subpopulations within the sample.

49.     In spectral flow cytometry, the fluorescent light is sent to a spectrograph in which the light signal is dispersed and measured as a spectrum on the multichannel detector.  Spectral flow cytometry distinguishes the shapes of emission spectra along a large range of continuous wavelengths.  The data is analyzed with an algorithm that replaces compensation matrices and treats auto-fluorescence as an independent parameter.

**C.     BD's Flow Cytometers And Trade Secrets**

50.     BD currently makes and sells multiple lines of flow cytometers and associated products.    These include the BD FACSAria™, BD FACSLyric™, BD Accuri™, BD

-10-

FACSCelesta™, BD LSRFortessa™, and BD FACSymphony™ lines of flow cytometers.  For decades, BD's flow cytometer products have been on the cutting edge of innovation, highly successful, and reputable, and are sought after for their quality and reliability.

51.     BD uses confidential code in the software that its customers use to run its flow cytometers.  This BD code provides control over the cytometer's hardware, which in turn carries out the actual functions of the flow cytometer.  This BD code instructs the cytometer how to function, thus performing control, monitoring, analysis, and data manipulation functions of the cytometer.  This BD code is confidential and proprietary and constitutes trade secret information.  BD also uses confidential algorithms for panel design, which allow for effective selection of dyes.  BD takes substantial care in keeping BD code and algorithms secret and out of the hands of its competitors.

52.     In roughly 2012, BD initiated a confidential project aimed at developing a flow cytometer with spectral analysis capabilities.  This project was known internally as "Project Newton."

53.     BD invested significant resources in Project Newton, including multiple years of research, financial investment, and substantial personnel time.  BD developed a working prototype, including a processing algorithm that allowed it to process and analyze assay data.  The specific ways in which BD's algorithms process and analyze data are proprietary and confidential and constitute trade secrets, and BD takes substantial care in keeping these algorithms secret and out of the hands of its competitors.

54.     The R&D related to this potential spectral flow cytometer involved new and confidential technology, including advances related to panel selection and development, fluidics, spectral unmixing, and new software code.  These advances, alone and in combination, would also be useful for non-spectral flow cytometry applications, including the service, repair, and upgrade of existing and future BD products.

55.     As a BD Principal Engineer and leader of the spectral flow cytometry project, Defendant Yan played an integral part in BD's research and development of this new project to develop a flow cytometer with spectral analysis.  Yan had access to BD's confidential R&D information regarding Project Newton, including but not limited to design drawings, prototypes, and

1  fluidics design details.   Yan was central to Project Newton since its inception and spent
2  approximately two years working on it.

3       56.   At least four other Individual Defendants, including Vrane, Gong, Zhong, and Jaimes,
4  worked on Project Newton under Yan's direction and had access to BD's confidential and proprietary
5  R&D information, including but not limited to design drawings, prototypes, software code, and
6  fluidics design details.

7       57.   The other Individual Defendants, including Riley, Zhang, and Shook, worked on other
8  confidential and proprietary BD flow cytometry development projects and had access to additional
9  confidential and proprietary R&D information, comprising circuit diagrams, prototypes, software
10 code, fluidics designs, and marketing strategies.  This confidential and trade secret information is
11 valuable for applications in spectral flow cytometry as well as non-spectral flow cytometry, including
12 service, repair, and upgrades of flow cytometry products.

13      58.   All of the Individual Defendants also worked on BD flow cytometer products aside
14 from Project Newton, which also involved BD's confidential, proprietary, and trade secret
15 information.

16      59.   BD developed the following trade secrets that, upon information and belief, the
17 Individual Defendants improperly took from BD and brought to Cytek, and that they and Cytek used
18 and continue to use:

19            a.   Trade secrets specific to Project Newton and spectral flow cytometry:
20                 i.    specific algorithms for spectral deconvolution and spectral unmixing,
21                       used to process data from spectral flow cytometers;
22                 ii.   software models for simulating operation of the Project Newton
23                       cytometer;
24                 iii.  panel designs for choosing reagents and dyes that optimize cytometer
25                       data;
26                 iv.   results of BD's research into automated panel design;
27                 v.    internal presentations about the Newton architecture and "modular
28                       design" for its components;

vi.     schematics for the Newton breadboard;

vii.    lists of specific modifications to factors for optimizing design of a spectral flow cytometer, including factors such as antigen abundance, reagent abundance, autofluorescence, and baseline restoration;

viii.   know-how regarding the specific assembly and performance of BD's working prototype.

b.   Trade secrets relating to the hardware and electronics components of BD flow cytometers:

i.      the designs for FPGAs (field-programmable gate arrays) for the BD Accuri$^{TM}$ C6 cytometer;

ii.     the interface and programming model for FPGAs in BD cytometers;

iii.    Operation Method Sheets (OMS) showing assembly instructions for BD cytometer products, with critical parameters, torque specifications, and part numbers needed to create BD products;

iv.     specific methods for "dynamic gain switching" to detect smaller electronic signals;

v.      specific methods for laser modulation and demodulation in BD Accuri$^{TM}$ cytometers;

vi.     the transducer board design and testing results for the BD FACSAria$^{TM}$ cytometer;

vii.    circuit diagrams showing designs and revisions for BD cytometers;

viii.   designs for vacuum-based fluidics systems for the BD FACSAria$^{TM}$ cytometers.

c.   Trade secrets relating to software for BD cytometers:

i.      source code for BD's "Virtual Cytometer" software for simulating the operation of flow cytometers;

ii.     source code and requirements documents for BD's FACSuite$^{TM}$ software for operating BD cytometers;

-13-

iii.   communication protocols for BD's Cytometer Controller software for the FACSAria<sup>TM</sup> II and FACSCanto<sup>TM</sup> II cytometers, explaining how different components of BD's cytometers communicate;

iv.   functional specifications for BD's FACSDiva<sup>TM</sup> 5.0 software;

v.   designs for BD's proprietary CS&T (Cytometer Setup and Tracking) software; including specifications for CS&T 2.0;

vi.   communications protocols that describe how BD's flow cytometer products communicate with personal computers;

vii.   source code for modeling cytometers;

viii.   source code specifications for BD's Accuri<sup>TM</sup> cytometers;

ix.   specifications for fluidics source code, including command sets for BD's Project Newton prototype.

d.   Trade secrets relating to the firmware in BD cytometers:

i.   the design specifications explaining the architecture of the BD Accuri<sup>TM</sup> firmware;

ii.   the design specifications for firmware and architecture for the fluidics components of BD's confidential "Liberty" and "Harambee" cytometer development projects;

iii.   firmware configuration files for BD's FACSDiva<sup>TM</sup> cytometers;

iv.   firmware communication protocols for BD's FACSAria<sup>TM</sup> cytometers;

v.   functional descriptions of firmware for cell sorter products, used to separate different cells that pass through a cytometer.

e.   Confidential data showing experimental data and results for BD cytometers:

i.   panel design data for the BD Fusion Aria<sup>TM</sup> cytometer;

ii.   data with results of quality control experiments with CS&T beads, used to evaluate cytometer performance;

              iii.      specifications for beads and dyes used to calibrate flow cytometers, including the quantities of dyes and parameters for calibration;

              iv.     data from prototype test runs that are used for development and refinement.

      f.      Trade secrets relating to BD's marketing, finances, and competitive strategy:

              i.      BD's internal marketing plans for cytometers, reflecting financial projections and profit margins for fiscal years 2015-2017, BD's "tactical plans" for cytometer product families, and BD's strategies for different market segments;

              ii.     competitive analysis of other companies' cytometers, reagents, and cell sorters;

              iii.    customer survey information for BD cytometers;

              iv.    confidential market research on competing products that customers bought;

              v.     confidential strategic analysis by third-party consultants to BD on market opportunities for molecular cell analysis.

(collectively, "the BD Trade Secrets").

60.     The BD Trade Secrets constitute valuable and confidential information that can be used individually or in combination to design, manufacture, and sell competing cytometers, giving competitors like Cytek an unfair advantage in creating their own products.  The BD Trade Secrets would also give companies that offer cytometer repair services, upgrade services, or replacement components (like Cytek) an unfair advantage by revealing confidential information about the design of BD's cytometers.

61.     The confidential files misappropriated by Defendants, individually and as a whole, contain BD Trade Secrets and were identified on removable media taken by the Individual Defendants.  Identifying information for the removable media is listed in Exhibit 1 and was provided to Cytek.

62.     Many of the files that the Individual Defendants improperly took from BD are

1  expressly marked as confidential and not for distribution.  As examples, circuit diagrams that the

2  Individual Defendants improperly took state: "This drawing and the information set forth herein are

3  the property [of] Becton Dickinson Immunocytometry Systems.  Publications, duplication, or use

4  not authorized in writing is prohibited."  BD internal marketing presentations state: "Company

5  Confidential."

6        63.    Because of their positions with BD in its San Jose Facility, the Individual Defendants

7  had access to BD's design, specifications, manufacturing plans, materials, processes, equipment, and

8  customer lists for all products in which the San Jose Facility maintains responsibility, including BD's

9  cytometer products.

10        64.    The BD Trade Secrets were developed by BD in the course of its business at

11  significant time, effort, and expense, and BD invests significant additional time, effort, and expense

12  to keep this information secret.

13        65.    BD's confidential and proprietary information—including, notably, the BD Trade

14  Secrets contained in the files taken by Individual Defendants—is not generally known outside of

15  BD.

16        66.    BD's competitive position rests on continually enhancing product development and

17  on a strong and consistent R&D approach founded on confidentiality and protection of intellectual

18  property in a highly competitive field.

19        **D.**      **BD's Efforts To Protect the Confidentiality of the BD Trade Secrets**

20        67.    BD has expended significant amounts of time, effort, money, and resources to

21  preserve and maintain the secrecy of the BD Trade Secrets, including through policies, procedures,

22  training programs, and systems that protect this information from disclosure to others and from use

23  by any one for purposes other than BD's interest.

24        68.    BD employees execute an Employee Agreement with BD, establishing the

25  employee's responsibility regarding BD's trade secrets and confidential information.

26        69.    Individual Defendants Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook

27  executed an Employee Agreement.  As such, each of these Individual Defendants was aware that

28  they were bound by such an agreement.  In addition to other corporate policies, Defendant Riley also

-16-

1  had an acknowledged duty to avoid disclosing or misusing BD's trade secrets and confidential

2  information.

3      70.    BD has policies and procedures concerning information and data security that stated,

4  in relevant part, that only the software provided and installed by BD was allowed on employee

5  computers, and that data and information on the BD Information System Network are proprietary

6  and confidential.

7      71.    BD employees are reminded of these policies when they sign into the BD system, as

8  reflected in messages such as this one:

> **You are about to enter a private network intended for the authorized use of Becton, Dickinson and Company and its affiliates ("BD") for business purposes. The actual or attempted unauthorized access, use, or modification of this network is prohibited by BD.  Unauthorized users and/or unauthorized use may be subject to BD disciplinary proceedings and/or criminal and civil penalties in accordance with applicable law.  The use of this system may be monitored and/or recorded for administrative and security reasons in accordance with applicable law and policies. If such monitoring and/or recording reveals possible evidence of criminal activity, BD may provide the monitored evidence of such activity to law enforcement officials. Authorized use of this network is subject to BD policies and procedures including the Acceptable Use Policy.**

16     72.    To the extent that BD confidential information exists in written paper form, such

17  writings are kept in secured areas with limited access.

18     73.    Guests to any BD facility, including the San Jose Facility, are not allowed to venture

19  unescorted into such secure areas or access BD Confidential Information unless they or their

20  employer had executed appropriate non-disclosure agreements with BD.

21     74.    BD maintains a Code of Conduct (the "Code") and has required all associates,

22  including the Individual Defendants, to participate each year in training pertaining to the Code.

23  Complying with the Code is a condition of employment with BD, and "[a]ll directors, officers and

24  employees are responsible for complying with the Code."  The Code prohibits BD employees from,

25  among other things, using BD Information Technologies to engage in the unauthorized access to

26  data, using "personal email or file services to conduct BD business[,]" downloading or installing

27  software that is not approved by BD, or using "hostage or storage services that have not been

28  approved by BD Information Security[.]"

75.     Each of the Individual Defendants agreed to the Code, as well as other separate agreements to protect BD's confidential information.

**E.     The Individual Defendants' Employment With BD**

76.     On or about January 23, 2006, BD hired Yan as a Principal Engineer in R&D.

77.     While employed by BD, Yan's primary responsibilities included working on BD's flow cytometers and R&D projects related to flow cytometry and other products.  Yan also headed Project Newton.  He oversaw numerous engineers and developers on this project, including Defendants Vrane, Gong, Zhong, and Jaimes, and dedicated approximately two years to this project.

78.     In 2014, BD elected to prioritize several other promising confidential projects over Project Newton.  Upon information and belief, upset by this decision, Defendant Yan—while still employed at BD—sought advice and investment from others to form his own company or join another company, to capitalize off and personally continue the work he had done on Project Newton.  Yan departed BD on January 16, 2015 and joined Cytek shortly thereafter as its Chief Technology Officer.

79.     Before commencing employment at Cytek and while still employed at BD, Yan downloaded at least 17,000 files to multiple separate removable media devices (one of the devices included in it a compressed or encrypted folder in a foreign language (Chinese)[1]).  Such files included (i) design detail information and specifications regarding the BD Accuri™ code; (ii) source code relating to BD's flow cytometry systems; (iii) testing information related to BD's flow cytometry systems; (iv) prototypes relating to BD's confidential program to develop a spectral cytometer; (v) design detail information and command settings for code relating to BD's confidential program to develop a spectral cytometer; and (vi) confidential code information relating to BD's confidential program to develop a spectral cytometer.  After diligent efforts to locate the removable media devices, including inquiries to Yan and Cytek, only one device has been found.  Upon information and belief, Yan (1) took the other devices and files with him when he left BD and (2) brought them

---

[1] BD has recovered one of the devices to which Yan downloaded BD information.  However, the device BD recovered does not contain the compressed or encrypted folder in a foreign language.

1  to Cytek, where he has disclosed and/or used and continues to use them and their content for Cytek's

2  benefit and has enabled others at Cytek to similarly use them.

3      80.    Upon information and belief, while still employed at BD and in a clear conflict of

4  interest, Yan was already planning how to develop his own competing flow cytometers and

5  communicating with investors about developing his own business, using the knowledge and

6  information gained from Project Newton and his years at BD.  Shortly after Yan departed BD in

7  January 2015, a representative of Fidelity Asia approached a retired BD employee to inquire about

8  potentially investing in a business in which Yan was involved.  The representative showed the retired

9  BD employee a copy of a patent application Yan had provided that was in Yan's own name.  That

10  application had been prepared and filed while Yan was employed at BD, and was based on

11  technology developed at BD.  Upon information and belief, Yan subsequently abandoned or

12  suppressed that patent application after the potential investors were informed that it was based on

13  BD technology.

14      81.    After Yan left BD and joined Cytek, he proceeded to recruit BD's flow cytometry

15  engineers, encouraging them to leave BD and join Cytek.

16      82.    Yan, along with Defendant Jaimes, worked directly on Cytek's Aurora$^{TM}$ flow

17  cytometer, and they unveiled it together at the June 2017 CYTO conference in Boston.  At least

18  Individual Defendants Riley, Vrane, Zhang, Gong, Zhong, and Reinin also participated in the June

19  2017 CYTO conference on behalf of Cytek.

20      83.    At the October 2017 CYTO Asia conference in Singapore, Defendants Reinin,

21  Jaimes, Shook, and Yan gave a presentation entitled "Enhancement of Multicolor Assay

22  Performance Using High Sensitivity Full Spectrum Cytometry," in which, upon information and

23  belief, the Aurora$^{TM}$ flow cytometer was showcased.  Defendant Yan also gave a presentation entitled

24  "A New Standard for High Sensitivity Full Spectrum Cytometry," in which, upon information and

25  belief, Yan referred to "an intelligent deconvolution algorithm" and showcased the Aurora$^{TM}$ flow

26  cytometer.

27      84.    At the April-May, 2018 CYTO conference in Prague, Czech Republic, Defendant

28  Jaimes once again displayed the Cytek Aurora$^{TM}$ flow cytometer in a presentation entitled

"Expanding Application Capabilities Using Full Spectrum Cytometry," in which the Aurora™ flow cytometer was showcased.  This presentation made apparent that the Aurora™ cytometer, though a spectral flow cytometer, relied on many of the same systems and quality control—such as panel design and calibration—that BD's systems employ.  At least Defendants Yan, Gong, Zhong, and Reinin participated in the 2018 CYTO conference on behalf of Cytek.

85.    On or about June 1988, BD hired Riley, whose position with BD before his departure to Cytek was Senior Program Manager.  Based on his employment status at the time, he was not required to sign an employment agreement.  Nevertheless, he accepted, and was subject to, a clear duty to maintain the confidentiality of BD trade secrets and other confidential proprietary information, and a duty of loyalty as BD's employee.

86.    While employed by BD, Riley's recent work primarily involved supporting several confidential and proprietary BD projects related to flow cytometry, including one of BD's proprietary clinical cytometer projects as well as a proprietary BD clinical analyzer project.

87.    Riley departed BD on January 10, 2015, and he joined Cytek in approximately February 2016.

88.    Before commencing employment at Cytek and while still employed at BD, Riley downloaded multiple files to at least one removable media device.  Such files included those related to R&D of clinical cytometry and analysis such as (i) design review templates and (ii) master project schedules.  Upon information and belief, Riley (1) took these devices and files with him when he left BD and (2) brought them to Cytek, where he has disclosed and/or used and continues to use them and their content for Cytek's benefit and has enabled others at Cytek to similarly use them.

89.    Riley is presently employed by Cytek as its General Manager.  On his LinkedIn profile, Riley describes himself as being "[r]esponsible for the successful operation of the Production, Service, Marketing, IT, and Program Management aspects of" Cytek's business.  Upon information and belief, Riley's work for Cytek is substantially similar to the work he did for BD, including working on Cytek's spectral flow cytometry products.  Riley participated in the 2017 CYTO conference on behalf of Cytek.

90.     Following the suspension of Project Newton, BD's spectral flow cytometry project and the departures of Yan and Riley shortly thereafter, both Yan and Riley proceeded to recruit from BD's ranks in its flow cytometry space, encouraging them to leave BD and join Cytek.

91.     On or about October 20, 1998, BD hired Vrane, whose position with BD before his departure to Cytek was in the R&D position of Senior Staff Engineer.

92.     While employed by BD, Vrane worked as a fluidics engineer on Project Newton, BD's spectral flow cytometry project overseen by Yan, as well as on several confidential and proprietary BD projects related to flow cytometry, including a proprietary clinical cytometer project, a proprietary BD clinical analyzer project, and a proprietary BD sorter project.  For example, Vrane designed the proprietary fluidics system for the BD FACSAria™ cytometers.  Shortly before leaving BD, Vrane worked on BD's proprietary vacuum fluidics subsystem for flow cytometers.

93.     Vrane departed BD on April 20, 2015, and he joined Cytek soon after.

94.     Before commencing employment at Cytek and while still employed at BD, Vrane downloaded multiple files to one or more separate removable media devices.  Such files included those related to R&D design and development of BD's spectral cytometry, clinical cytometry, and sorting such as (i) fluidics design files and (ii) mode table files.  Upon information and belief, Vrane (1) took these devices and files with him when he left BD and (2) brought them to Cytek, where he has disclosed and/or used and continues to use them and their content for Cytek's benefit and has enabled others at Cytek to similarly use them.

95.     Vrane is presently employed by Cytek as a Staff Specialist: Fluid Dynamics.  Upon information and belief, Vrane's primary responsibilities for Cytek are substantially the same as his primary responsibilities when he worked for BD, including working on Cytek's spectral flow cytometry products.  Vrane participated in the 2017 CYTO conference on behalf of Cytek.

96.     On or about July 2005, BD hired Jaimes, whose position with BD before her departure to Cytek was Scientist.

97.     While employed by BD, Jaimes worked on Project Newton, as well as other confidential R&D projects.

1    98.    Before commencing employment at Cytek and while still employed at BD, Jaimes

2  downloaded multiple files to one or more removable media devices.  Such files included product test

3  protocols and service specifications.  Upon information and belief, Jaimes (1) took these devices and

4  files with her when she left BD and (2) brought them to Cytek, where she has disclosed and/or used

5  and continues to use them and their content for Cytek's benefit and has enabled others at Cytek to

6  similarly use them.

7    99.    Jaimes departed BD on or about April 30, 2015, and she joined Cytek in July 2015.

8    100.    Jaimes is presently employed at Cytek as an application specialist.  Upon information

9  and belief, her role at Cytek includes work with Yan on flow cytometry projects, including Cytek's

10  spectral flow cytometry products.  Indeed, Jaimes has made public presentations of Cytek's flow

11  cytometry products on at least two separate occasions, including at the 2017 CYTO conference and

12  2017 CYTO Asia conference.  Jaimes also participated in the 2018 CYTO conference on behalf of

13  Cytek.

14    101.    On or about January 3, 2005, BD hired Zhang, whose position with BD before his

15  departure to Cytek was Software Developer.

16    102.    While employed by BD, Zhang's primary responsibilities included working on

17  various flow cytometry projects.

18    103.    Zhang departed BD on April 25, 2015, and he joined Cytek in 2016.

19    104.    Before commencing employment at Cytek and while still employed at BD, Zhang

20  downloaded source code files to one or more removable media devices.  Upon information and belief,

21  Zhang (1) took these devices and files with him when he left BD and (2) brought them to Cytek,

22  where he has disclosed and/or used and continues to use them and their content for Cytek's benefit

23  and has enabled others at Cytek to similarly use them.

24    105.    Zhang is presently employed by Cytek as a software developer.  Upon information

25  and belief, Zhang's primary responsibilities for Cytek are substantially the same as his primary

26  responsibilities when he worked for BD, including working on Cytek's spectral flow cytometry

27  products.  Zhang participated in the 2017 CYTO conference on behalf of Cytek.

28

106.   On or about June 5, 2000, BD hired Gong, whose position with BD before his departure to Cytek was in the R&D position of Staff Engineer.

107.   While employed by BD, Gong's primary responsibilities included working on software development for BD's proprietary spectral flow cytometry project overseen by Yan, as well as software development relating to several additional confidential and proprietary BD flow cytometry projects, including that relating to BD's proprietary and confidential cytometer panel design.

108.   Gong departed BD in May 2015, and he joined Cytek that same month.

109.   Before commencing employment at Cytek and while still employed at BD, Gong downloaded multiple files to one or more separate removable media devices.  Such files included those related to R&D design and development of BD's spectral cytometry software and cytometer panel design software such as (i) software design files and (ii) panel specification files.  Upon information and belief, Gong (1) took these devices and files with him when he left BD and (2) brought them to Cytek, where he has disclosed and/or used and continues to use them and their content for Cytek's benefit and has enabled others at Cytek to similarly use them.

110.   Gong is presently employed by Cytek as Director of Software Development.  Upon information and belief, Gong's current role as Cytek's Director of Software Development includes the development, use, and implementation of software in Cytek's flow cytometry systems.  Upon information and belief, Gong was and continues to be involved in the use of BD software files taken to Cytek by Gong and other Individual Defendants, and the implementation of such files into Cytek products, including Cytek's spectral flow cytometry products.  Gong participated in the 2017 and 2018 CYTO conferences on behalf of Cytek.

111.   On or about March 28, 2011, BD hired Zhong, whose position with BD before his departure to Cytek was in the R&D position of Engineer II.

112.   While employed by BD, Zhong's primary responsibilities included work as a systems engineer on Project Newton, BD's proprietary spectral flow cytometry project overseen by Yan, as well as on another confidential and proprietary BD clinical cytometer project.

113.    Zhong departed BD on or about January 18, 2016, and he joined Cytek that same month.

114.    Before commencing employment at Cytek and while still employed at BD, Zhong downloaded multiple files to one or more separate removable media devices.  Such files included those related to R&D design, development, and experimentation of BD's spectral cytometry and clinical cytometry, such as (i) spectral cytometry experiment files and (ii) experimental data.  Upon information and belief, Zhong (1) took these devices and files with him when he left BD and (2) brought them to Cytek, where he has disclosed and/or used and continues to use them and their content for Cytek's benefit and has enabled others at Cytek to similarly use them.

115.    Zhong is presently employed by Cytek as China Business Manager.   Zhong participated in the 2017 and 2018 CYTO conferences on behalf of Cytek.

116.    On or about October 17, 2011, BD hired Shook, whose position with BD before her departure to Cytek was in the R&D position of Senior Project Engineer.

117.    While employed by BD, Shook worked on several proprietary and confidential BD projects related to flow cytometry, including two proprietary clinical cytometer projects, a proprietary analyzer project, and a proprietary sorter project.

118.    Shook departed BD in October 2016, and she joined Cytek the following month, in November 2016.

119.    Before commencing employment at Cytek and while still employed at BD, Shook downloaded multiple files to one or more separate removable media devices.  Such files included those related to R&D design, development, and experimentation of BD's clinical cytometry, analysis, and sorting such as (i) CAD drawings; (ii) design review summaries; and (iii) experimentation files.  Shook (1) took these devices and files with her when she left BD and (2) brought them to Cytek, where she has disclosed and/or used and continues to use them and their content for Cytek's benefit and has enabled others at Cytek to similarly use them.

120.    Shook is presently employed by Cytek as a Systems Engineer.  Upon information and belief, Shook's primary responsibilities for Cytek are substantially the same as her primary

1  responsibilities when she worked for BD, including working on Cytek's spectral flow cytometry

2  products.  Shook participated in the 2017 CYTO Asia conference on behalf of Cytek.

3       121.   On or about October 15, 2007, BD hired Reinin, whose position with BD before his

4  departure to Cytek was Senior Project Manager.

5       122.   While employed by BD, Reinin's primary responsibilities included marketing and

6  product commercialization, including work on BD's proprietary FACSAria™ cell sorter project and

7  other customer product development projects.

8       123.   Reinin departed BD on or about June 13, 2016, and he joined Cytek the following

9  month, in July 2016.

10      124.   Before commencing employment at Cytek and while still employed at BD, Reinin

11  downloaded multiple files to a removable media device.  Such files contained BD confidential and

12  proprietary information relating to BD marketing strategy and product pricing information, and

13  product specifications for BD products including the FACSAria$^{TM}$ Fusion.  Upon information and

14  belief, Reinin (1) took these devices and files with him when he left BD and (2) brought them to

15  Cytek, where he has disclosed and/or used and continues to use them and their content for Cytek's

16  benefit and has enabled others at Cytek to similarly use them.

17      125.   Reinin is presently employed by Cytek as Director of Marketing.  Upon information

18  and belief, his primary responsibilities at Cytek include marketing strategy for Cytek's products and

19  services, including working on the marketing strategy for Cytek's spectral flow cytometry products.

20  Reinin participated in the 2017 CYTO, 2017 CYTO Asia, and 2018 CYTO conferences on behalf of

21  Cytek.

22      126.   The files the Individual Defendants took from BD are useful to every aspect of

23  Cytek's business, including (1) the design and development of spectral and non-spectral flow

24  cytometry systems; (2) the service, repair, and upgrading of a wide variety of flow cytometry

25  systems, whether or not they are manufactured by Cytek; and (3) the marketing and sale of flow

26  cytometry products and services.

27      127.   Upon Cytek's hiring of the Individual Defendants, Defendant Cytek knew or should

28  have known that Defendants Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and/or Shook was

-25-

1  subject to an Employment Agreement under his or her former employer, BD.  Further, Defendant

2  Cytek knew or should have known that Defendant Riley was subject to confidentiality obligations to

3  his former employer, BD.

4        **F.**    **The Individual Defendants' Responsibilities to BD**

5        128.    Together, the Individual Defendants possess decades of knowledge of BD's

6  confidential, proprietary, and trade secret information relating to the development of BD's flow

7  cytometry products, including the BD Trade Secrets gained through their former employment with

8  BD.

9        129.    As employees of BD, the Individual Defendants other than Riley executed an

10  Employee Agreement (the "Agreement") that set forth obligations that the Individual Defendants

11  had as employees concerning, among other things, confidential information, technology, and trade

12  secrets.  Each Agreement sets forth the same or substantially the same terms.

13        130.    Upon signing the Agreements, the Individual Defendants agreed that they were

14  prohibited from disclosing or using, outside the scope of their employment, any BD confidential

15  information, including "any confidential or unpublished information, business plan, financial

16  information, trade secret, computer program, design, product, process, procedure, formula, research,

17  improvement, work of authorship, or the like, whether of a technical or non-technical nature,"

18  relating to BD's business.

19        131.    The Individual Defendants further agreed that upon leaving BD, they would promptly

20  return all BD property, "including such things as drawings, manuals, notebooks, reports, customer

21  and vendor lists, all samples, all prototypes, all demos, and like material, and anything else owned

22  by the Company or to which the Company is entitled and which is in my possession or under my

23  control."

24        132.    The Individual Defendants also assigned, and agreed to assign, to BD all right, title,

25  and interest in any innovations (defined as "any idea, invention, discovery, improvement, copyright,

26  and the like") developed during the time of their employment or a period of one year after their

27  employment.

28        133.    Each Employee Agreement is governed by New Jersey law.

134.    As a result of their position at BD, the Individual Defendants all had access to BD confidential information, including BD's design, specifications, blueprints, manufacturing plans, materials, processes, technical information, marketing materials, and other information relating to BD's flow cytometers.  Such access included access to the BD Trade Secrets.

135.    Yan, Vrane, Gong, Zhong, and Jaimes also had access to BD's highly confidential design files, prototypes, software, and analyses regarding BD's R&D efforts in connection with Project Newton, a flow cytometer capable of spectral analysis.  Such access included access to the BD Trade Secrets.

136.    BD maintains a Trade Secret Policy to which the Individual Defendants had access during their employment.  The Trade Secret Policy states in part:

4.3    *Examples of BD Trade Secrets*

BD trade secrets may include, but need not be limited to:

(a)    Information relating to:
(i)    intellectual property such as unpublished patent, trademark or copyright applications, or invention disclosures;
(ii)    research and development activities and results such as formulas, prototypes, processes, laboratory notebooks, experiments and experimental data, analytical data, calculations, drawings, vendor/supplier information, reports, know-how and negative know-how (i.e., what does not work), new product development, clinical study protocols, results and associated data.

------------------------------------------------------------------------------------------------------

(e)    BD Associates—BD trade secrets should be made available to BD associates on a "need to know" basis only.  BD associates should treat all non-public information about BD as a BD trade secret unless otherwise instructed.

137.    The Trade Secret Policy also states that "Every BD associate with access to BD trade secrets shall comply with this Policy."

138.    During their employment at BD, the Individual Defendants had access to paper, computer, and other files that had R&D information concerning a number of various and ongoing projects, including the BD Trade Secrets.

139.    BD issued to each of the Individual Defendants a laptop computer and provided each with access to BD's network files and hard copy files.  Network files include specific product

1   information, technical reports, and project lists. Hard copy files include all product designs,

2   manufacturing instructions, quality control specifications, and chemical characteristics.

3       140.    The information to which the Individual Defendants had access was confidential and

4   proprietary and constituted trade secrets under at least California, New Jersey, and federal law.

5       141.    In each of their roles at BD, the Individual Defendants routinely played a critical part

6   in the various product-related and R&D-related projects pertaining to flow cytometry.  The technical

7   and clinical designs, pictures, and drawings, design data, product and process developments,

8   prototypes, marketing data and marketing studies, and other innovative information relating to each

9   of these products or developing products are extremely confidential, have great value to BD and

10  would have significant economic value to its competitors.  If a competitor of BD were to learn of the

11  designs, blueprints, and other innovative information relating to any of these products or developing

12  products, it would cause BD great harm and put it at significant competitive disadvantage.

13      142.    Furthermore, the collective knowledge possessed by the Individual Defendants of

14  BD's confidential, proprietary, and trade secret information would be exceptionally valuable to a

15  competitor, and would cause BD great harm and put it at significant competitive disadvantage.

16      **G.    Cytek's Employment of the Individual Defendants and Recent Launch of**

17              **Competitive Cytometers**

18      143.    Cytek was founded in the early 1990s by a former employee of BD as a service-

19  oriented company providing service, upgrades, and technical support to flow cytometers developed

20  by other companies, including BD.

21      144.    Cytek Biosciences Inc. is the outcome of a merger between Cytek Development Inc.,

22  and Cytoville Inc., a venture capital-backed business focused on advanced medical instrument

23  technology development.  *See* https://www.biospace.com/article/releases/ cytek-biosciences-poised-

24  to-accelerate-flow-cytometry-adoption-/, Mar. 29, 2017 (last viewed Feb. 3, 2018).

25      145.    Before approximately March 2017, Cytek continued in its original service-oriented

26  role, and did not produce or sell any of its own cytometers.

27

28

146.    According to its current website, however, Cytek now consists of "engineers, scientists and customer service representatives who design, build and support flow cytometers."  *See* https://cytekbio.com/pages/about (last viewed June 5, 2018).

147.    Also according to its current website, Cytek is now a "manufacturer and supplier of flow cytometry products and services."  *Id.*

148.    According to Cytek's website, Yan "is a co-founder of Cytek Biosciences, Inc.[,]" is on Cytek's Board of Directors, and is Cytek's Chief Technology Officer.  *Id.*

149.    The other Individual Defendants are all currently employed with Cytek as well.  A substantial number of Cytek's R&D positions, including senior management and technology positions, are held by former BD employees.

150.    On or about March 15, 2017, less than two years after Yan began employment with Cytek, Cytek launched its first flow cytometry system, the DxP Athena™ flow cytometry system.  The DxP Athena™ is marketed and sold throughout the United States and worldwide.

151.    Less than three months after it launched the DxP Athena™ flow cytometry system, on or about June 7, 2017, Cytek launched another flow cytometry system, the Cytek Aurora™ flow cytometry system.  The Aurora™ shares striking similarities with the spectral flow cytometer previously in development at BD by Yan and other Individual Defendants, as well as other BD products and technologies.  Specifically, the Cytek Aurora™ is a flow cytometer with spectral analysis capabilities similar to those that were in development at BD through Project Newton.  The Aurora™ is sold throughout the United States and worldwide.

152.    Since 2016, Cytek has filed patent applications directed to technologies relating to spectral flow cytometry, including published applications with Yan and Vrane as named inventors.

153.    Use of BD's confidential, proprietary, and trade secret information held by the Individual Defendants and contained in the files they misappropriated greatly helped Cytek bring its DxP Athena™ and Aurora™ flow cytometry systems to market.  That information would have given Cytek an unfair advantage and head start in developing their own flow cytometer products.  Use of BD's confidential, proprietary, and trade secret information held by the Individual Defendants and

1  contained in the files they misappropriated greatly helps Cytek with its original business of service,

2  repair, and upgrade of BD products.

3      154.   Cytek used BD's confidential, proprietary, and trade secret information as part of its

4  effort to develop and market flow cytometry systems, including but not limited to, the DxP Athena™

5  flow cytometry system and the Aurora™ flow cytometry system, to the detriment of BD.

6      **H.    The Theft Of Confidential Information And Trade Secrets From BD and**

7          **Systematic Poaching of BD Employees by Cytek**

8      155.   In January 2018, having learned from public information that several BD employees

9  had left BD's employ and accepted employment with Cytek after being specifically targeted and

10  recruited, BD initiated an ongoing internal review.  As a result of the internal review, BD learned

11  that the Individual Defendants had downloaded thousands of files to dozens of removable media

12  devices containing BD confidential and proprietary information and trade secrets, including the BD

13  Trade Secrets, while still employed at BD.

14      156.   BD engaged in diligent efforts to recover the missing devices, including but not

15  limited to: (a) making written demands to certain Individual Defendants for the immediate return of

16  the devices; (b) conducting a search of the BD San Jose Facility for the devices; and (c) requesting

17  that Cytek assist BD with recovering the devices from their current officer(s) and employees,

18  preserve information related to the missing devices, and agree to a third-party forensic inspection.

19      157.   Of the dozens of devices to which the Individual Defendants downloaded BD

20  confidential information, to date BD has been able to recover only a handful of devices.

21      158.   BD's internal review revealed the downloading activity by the Individual Defendants

22  described above.

23      159.   The Individual Defendants were in possession of the misappropriated BD Trade

24  Secrets, as well as their individual and combined knowledge of BD's proprietary and confidential

25  information related to BD's flow cytometry and spectral flow cytometry, when they joined Cytek

26  and, on information and belief, used, and continue to use, those trade secrets in their work there for

27  the benefit of Cytek and have enabled others at Cytek to similarly use them.

28

**THIRD AMENDED COMPLAINT**                    **CASE NO. 3:18-CV-00933-MMC**

160.    Cytek and Yan knew or should have known of the other Individual Defendants' contractual obligations to BD, which included (1) an obligation not to use or disclose BD confidential information outside the scope of their employment at BD, (2) the obligation to assign intellectual property, (3) the obligation to return BD property upon leaving BD, and (4) a duty of loyalty to BD as its employees.

161.    With its improper access to and misuse of the BD Trade Secrets, Cytek was able to develop and launch its own spectral flow cytometry products rapidly, despite having never before produced a flow cytometer product itself—its only prior experience being in servicing and refurbishing others' flow cytometers, including BD's.  Cytek would not have been able to develop flow cytometers on as rapid a time frame but for its wrongful use of the BD Trade Secrets, aided by the improper disclosures and participation of the Individual Defendants.

162.    After learning of Yan's and the other Individual Defendants' conduct regarding BD's confidential information, BD contacted Cytek and asked that Cytek preserve any relevant information and agree to a third-party review of its computer systems for BD's confidential information.  After learning of the conduct of the other Individual Defendants regarding BD's confidential information, BD again contacted Cytek to reiterate the need for a third-party review. BD also provided Cytek with information about the missing removable media devices.  To date, Cytek has not agreed to allow a third-party review of its computer systems.

163.    The BD Trade Secrets derive significant independent economic value, actual and/or potential, from not being generally known to the public or to other persons that can obtain economic value from their use or disclosure.  BD derives substantial business advantage and significant economic benefit from maintaining the confidentiality of the BD Trade Secrets.

164.    The Individual Defendants' improper disclosure to Cytek of the BD Trade Secrets, and Cytek's and the Individual Defendants' improper use of the BD Trade Secrets, has caused and will cause substantial economic harm and disadvantage to BD, some of which is not even known or knowable at the present time.

165.    BD has been injured by Defendants' conduct, including lost profits, lost revenue, Cytek's unjust enrichment, and other harms.

## I.    Cytek's Unauthorized Copying and Use of BD's Copyrighted Materials

166.    In addition to misappropriation of BD's valuable trade secrets, Cytek's product development and commercialization efforts for its flow cytometer products also involved the unauthorized copying, reproduction, and distribution of, and the unauthorized preparation of derivative works based on, certain copyrighted materials authored and owned by BD, including software and documentation for BD's own products.

167.    In connection with its flow cytometer products, BD authored and distributes the BD FACSDiva software and the BD FACStation software, and owns all U.S. copyright rights in those works.

168.    BD has released multiple versions of the BD FACSDiva software over the years, and owns all U.S. copyright rights in each of those versions.

169.    BD also has released multiple versions of the BD FACStation software over the years, and owns all U.S. copyright rights in each of those versions.

170.    In addition, BD has provided various manuals, training materials, and other documentation (collectively, the "Documentation") in connection with its flow cytometer products and related software (including BD FACSDiva and BD FACStation), and is the author and owner of all copyright rights in that Documentation.

171.    BD is, and at all relevant times has been, the owner of all copyright rights in all versions of the BD FACSDiva software works, the BD FACStation software works, and the Documentation (collectively, the "BD Copyrighted Works"), all of which are original works of authorship that constitute copyrightable subject matter under U.S. law.

172.    BD owns the following U.S. copyright registrations for its BD FACSDiva software works: U.S. Reg. No. TX 8-760-618 for Version 6.1.3, Reg. No. TX 8-760-635 for Version 7.0, and Reg. No. TX 8-760-661 for Version 8.0 (collectively, the "BD FACSDiva software works"), all of which remain valid and subsisting. *See* Exhibit 2 (copyright certificates).

173.    BD also owns a U.S. copyright registration for its BD FACStation software work, U.S. Reg. No. TX 8-784-370 for Version 6.0.4, which remains valid and subsisting. *See* Exhibit 3 (copyright certificate).

174.    BD also owns U.S. copyright registrations for certain of its Documentation, including: U.S. Reg. No. TX 8-753-485 for the BD FACSVerse System User's Guide; U.S. Reg. No. TX 8-753-555 for the BD FACScan System Instructional Module; U.S. Reg. No. TX 8-760-376 for the 2004 BD FACSCanto II Instructions for Use; U.S. Reg. No. TX 8-754-888 for the 2005 BD FACSCanto II Instructions for Use; U.S. Reg. No. TX 8-757-768 for the 2006 BD FACSCanto II Instructions for Use; and U.S. Reg. No. TX 8-787-941 for technical specifications for BD's LSRFortessa X-20 Cell Analyzer, all of which remain valid and subsisting.  Copies of each of these works are attached hereto as Exhibits 4-9, and the copyright certificates for each of these works are attached hereto as Exhibit 10.

175.    Even aside from Cytek's actual knowledge of BD's copyright rights in each of the above-noted works, each of the BD Copyrighted Works except the BD FACScan System Instructional Module included notices expressly stating that BD was the copyright owner of those works.  See Exhibits 11-15 (copyright notices for BD FACSDiva 6.0, 7.0, and 8.0 and BD FACStation 6.0.4 included in their manuals, and for BD FACSDiva 6.1.3 as depicted when run), Exhibits 4 at 2, 6 at 2, 7 at 2, 8 at 2, and 9 at 4 (copyright notices for the Documentation).

176.    As just one example of these notices, the 2005 BD FACSCanto II Instructions for Use states in relevant part:

> "© 2005, Becton, Dickinson and Company. All rights reserved. No part of this publication may be reproduced, transmitted, transcribed, stored in retrieval systems, or translated into any language or computer language, in any form or by any means: electronic, mechanical, magnetic, optical, chemical, manual, or otherwise, without prior written permission from BD Biosciences."

and

> "BD FACSDiva software © Becton, Dickinson and Company. This software is the property of Becton, Dickinson and Company. Each sale of a stored unit of this software grants the purchaser a nontransferable, nonexclusive, personal license. This software may not be duplicated, reproduced, or copied in any form or by any means whatsoever, except as otherwise permitted by law."

*See* Exhibit 7 at 2.

177.    Nevertheless, as BD learned only in the course of discovery in this action, Cytek has infringed and, upon information and belief, is continuing to infringe the BD Copyrighted Works by

1    making and distributing, and upon information and belief by continuing to make and distribute,

2    unauthorized copies of and derivative works based on those works.

3        178.    Cytek infringed the BD FACSDiva software works by copying protected content from

4    and creating unauthorized derivatives of those works, beginning with the prototype of the Aurora

5    spectral flow cytometer and its software in 2015 and continuing, on information and belief, to the

6    present day.  Access to this material, which is an element of infringement, is evidenced by (i) Cytek's

7    admission ███████████████████████████████████████████████" (Answer to

8    BD's Interrogatory 15, attached hereto as Exhibit 16), as well as (ii) BD's own records showing that

9    Cytek purchased at least one copy of FACSDiva 6.1.3 in 2011 and multiple copies of FACSDiva 8.0

10   in 2013-14, and (iii) Cytek's own documents showing the purchase of various versions of FACSDiva

11   8.0 from 2015-19.  CYTEK 360281-319.  The element of copying is evidenced by Cytek documents

12   proving that it impermissibly copied and used protected content from those copyrighted BD

13   FACSDiva works to create its own unauthorized derivative hardware and software works. ████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ███████████████████████████████  Copies of these documents are

24   attached as Exhibits 17-22.

25       179.    Cytek also has infringed BD's copyright rights in BD FACStation 6.0.4 by making

26   unauthorized copies of that work in its entirety.  This infringement is exemplified by Cytek

27   documents showing (i) Cytek's possession of, and therefore access to, that work, as evidenced by an

28   August 30, 2016 email from Dave Kripal noting its possession of the BD FACStation 3.5.1, 5.1.1,

-34-

5.2, and 6.0.4 software (CYTEK 165402-03), and (ii) Cytek's unauthorized copying of that work, as exemplified by an undated Cytek document explaining how to install FACStation 6.0 software on multiple computers: both "computer[s that] originally came from BD" and "computer[s that] originally came from Cytek." (CYTEK 172066). Copies of these documents are attached as Exhibits 23-24.

180.     As set forth in greater detail in Section C below, none of Cytek's infringing conduct relating to BD FACScan or BD FACStation, including that specifically set forth in paragraphs 178-179 above, was authorized or permitted by the license agreements for those software products.

181.     Cytek also has infringed BD's copyright rights in the BD FACSVerse System User's Guide by impermissibly copying protected content from and making unauthorized derivative works based on that work. This infringement is evidenced by Cytek documents showing (i) Cytek's possession of, and therefore access to, that work (Exhibits 25-26, CYTEK 19024, 93188), and (ii) Cytek's unauthorized copying of that work, including a January 27, 2016 email from Zen Gong evidencing Cytek's unauthorized distribution of a copy of that work by email (Exhibit 27, CYTEK 92757)—a copyright infringement in itself—as well as, *inter alia*, December 28, 2018 emails from Stephen Zhou and Zen Gong stating that they had taken the fluidics shutdown process for their Aurora product from the "BD FACSVerse user guide" (Exhibit 28, CYTEK 90504), and █████████ ████████ from the BD FACSVerse System User's Guide in its own user guide, as depicted in the side-by-side comparison below:



A copy of the BD FACSVerse System User's Guide is attached as Exhibit 4, and Cytek's document from the comparison above is attached as Exhibit 29.

182.     Cytek also has infringed BD's copyright rights in the BD FACScan System Instructional Module by impermissibly copying protected content from and making unauthorized

-35-

derivative works based on that work.  This infringement is evidenced by Cytek's own admission in response to BD's Interrogatory 15 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████, attached hereto as Exhibit <u>16</u>.  This infringement also is evidenced by Cytek documents showing (i) Cytek's possession of, and therefore access to, that work (Exhibits <u>30</u>-<u>31</u>, CYTEK 11460, 193690), and (ii) Cytek's unauthorized copying and creation of derivative versions of that work, including an August 29, 2015 email from David Vrane stating that Cytek "can **copy the tank changing procedure verbatim** from the [FAC]Scan document" (Exhibit <u>32</u>, CYTEK 201831), and ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Exhibit <u>33</u>, CYTEK 8608). This copying is further evidenced by the many substantial similarities between the two works, including as set forth in the side-by-side comparisons below:



BD FACScan System Instructional Module (Ex. 05)

At 2

## BD FACScan System
## Instructional Module
(Ex. 05)



**Figure 2-2** Fluid Control Panel

**Fluid Control Dial**

This rotary dial allows you to select from five fluidic modes.

**DRAIN**—forces liquids out of the flow cell and fluid lines leading to the waste.

**FILL**—fills the flow cell and fluid lines with sheath fluid at a controlled rate, which prevents bubble formation.

**RUN**—pressurizes the sample tube to transport the cell suspension through the sample injection tube and into the flow cell. When a tube is not on the Sample Injection Port (SIP), the cytometer goes into auto standby. Sheath flow is restricted and laser power is lowered.

**STANDBY**—stops sheath flow and lowers laser power to extend the laser life. Hard Standby and Auto Standby are defined under Status Controls of the Control Panel.

**BACKFLUSH**—reverses the flow of sheath fluid and flushes fluid out of the sample injection tube to remove clogs.

**Sample Flow Rate Switch**

The HI/LO flow rate switch selects the sample flow rate.

- **LO**—12 µL/min of sample through the flow cell.

- **HI**—60 µL/min of sample through the flow cell.

At 3



## BD FACScan System
## Instructional Module
(Ex. 05)

**Sample Injection Port**

The SIP is the area where the sample tube is installed. It consists of the sample injection tube through which the sample travels to the flow cell, the tube support arm, and the droplet containment system (Figure 2-3).



**Figure 2-3** Sample Injection Port

At 5

**THIRD AMENDED COMPLAINT**                    **CASE NO. 3:18-CV-00933-MMC**

A copy of the BD FACScan System Instructional Module is attached as Exhibit 5, and Cytek's document from the comparison above is attached as Exhibit 33.

183.    Cytek also has infringed BD's copyright rights in the 2004, 2005, and 2006 BD FACSCanto II Instructions for Use by impermissibly copying protected content from and making unauthorized derivative works based on those works.  This infringement is evidenced by (i) Cytek documents showing Cytek's possession of, and therefore access to, these instructions (Exhibit 34, CYTEK 273766), and (ii) Cytek's unauthorized copying of content from those works ███████ ████████████████████████████████████████████, including as set forth in the side-by-side comparison of the 2006 version with Cytek's manual below:



A copy of the 2006 BD FACSCanto II Instructions for Use is attached as Exhibit 8, and Cytek's document from the comparison above is attached as Exhibit 33.

184.    In addition, Cytek has infringed BD's copyright rights in the LSRFortessa X-20 Cell Analyzer technical specifications by impermissibly copying protected content from and making unauthorized derivative works based on that work.  This infringement is evidenced by (i) Cytek

-38-

1  documents showing Cytek's possession of, and therefore access to, that work (Exhibit 35, CYTEK

2  73721), and (ii) Cytek's unauthorized copying of the content of that work to create its Cytoville

3  Spectral Flow Cytometer Violet Laser manual, including as depicted in the side-by-side comparison

4  of BD's work with a draft of Cytek's manual below, and in the final version as well:



**BD LSRFortessa X-20
Cell Analyzer
Technical Specifications**
(Ex. 09 at 2)

**Flow Cell Design**
Rectangular quartz cuvette:
Internal cross-section, 430 x 180 μm
External quartz cuvette surfaces are anti-reflective coated for optimal transmission of laser light.
Fixed optical assembly with spatially separated laser beams.

**Optical Coupling**
The quartz cuvette flow cell is gel-coupled by refractive index-matching optical gel to the fluorescence objective lens (1.2 NA) for optimal collection efficiency.

**Emission Optical Design**
Emitted light from the gel-coupled cuvette is delivered by fiber optics to the detector arrays. The BD LSRFortessa X-20 uses configurable polygon-shaped optical pathways that use signal reflection to maximize signal detection. Please see the filter guide at **bdbiosciences.com** for information on dye and filter options.

**Sample Flow Rates**
Front button panel provides three modes:
RUN, STANDBY, and PRIME
Continuously adjustable flow rate, plus three preset flow rates:
LO: 12 μL/min
MED: 35 μL/min
HI: 60 μL/min

1  A copy of the LSRFortessa X-20 Cell Analyzer technical specifications is attached as Exhibit 9, and

2  Cytek's document from the comparison above is attached as Exhibit 36.

3      185.    The infringing conduct and content noted above are based on the limited discovery

4  and Cytek's limited production on copyright issues to date.  Other documents produced to date by

5  Cytek strongly suggest that additional infringing conduct occurred, and provided that Cytek properly

6  produces documents and other evidence responsive to BD's claims and discovery requests, BD

7  reasonably believes that further production of materials that presently are entirely within Cytek's

8  possession, custody, and control will reveal such additional infringing and otherwise actionable

9  conduct continuing to the present day.

10      186.    As further evidence that Cytek engaged in a regular and routine process of copying

11  BD's own copyrighted materials, Cytek recently produced, among other documents, ████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████" (CYTEK 359665); ████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████" (CYTEK 358420); and ████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████ (CYTEK 106588).  Copies of these documents are

19  attached as Exhibits 37-39.

20      187.    Cytek's unauthorized copying, reproduction, and distribution of the BD Copyrighted

21  Works, and the unauthorized preparation, reproduction, and distribution of derivative works based

22  on the BD Copyrighted Works, has harmed BD and benefitted Cytek.

23      188.    More particularly, Cytek's infringing conduct, including those examples specifically

24  noted above, has caused and will continue to cause BD to suffer monetary injury, including damages

25  resulting from the loss of sales of its LSR Fortessa 4L and 5L and FACSymphony A5 spectral

26  cytometer products, as well as lost sales of associated products and services, to Cytek's infringing

27  flow cytometry products, including at least its Aurora and Northern Lights products, as well as sales

28  of their associated products and services, from no later than 2017 to the present, and projected into

the future.  As discussed above, Cytek has marketed and sold products and other materials that infringe BD's copyright rights in the BD Copyrighted Works, and as a result of that infringement the market value of BD's Copyrighted Works has been injured, and BD has lost sales of its own products and services to Cytek's competing products and services.  Moreover, BD has lost the value of hypothetical licenses of the BD Copyrighted Works to Cytek, which could be estimated as the amount Cytek reasonably would have been required to pay to BD at the times of its infringements (from 2015 forward) for the actual uses Cytek made of the BD Copyrighted Works.

189.    In addition, Cytek's infringing conduct, including those examples specifically noted above, have allowed and will continue to allow Cytek to wrongfully profit and unjustly enrich itself from its infringement, including, upon information and belief, and without limitation, (a) ██████ ████████████████████████████████████████████████████████████ , (b) ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ and which allowed it to successfully market its own competing flow cytometry products, and (c) by continuing to market and sell, and to profit from, flow cytometry products and related materials, including at least its Aurora and Northern Lights products, that, upon information and belief, continue to include hardware, software, and other content that infringe BD's Copyrighted Works.

190.    More particularly, Cytek appears to have infringed BD's Copyrighted Works, and to have held out BD's own achievements as Cytek's own, as part of a scheme to fool investors and scientific evaluators into believing that Cytek's flow cytometry products and software and related documentation—and Cytek's contributions to those products and that software and documentation—were more comprehensive and complete than they actually were.

191.    Absent injunctive relief, and particularly given the evidence noted above that Cytek has regularly, deliberately, and in bad faith copied and infringed BD's Copyrighted Works and other works to develop, market, and sell its own flow cytometry products and related documentation and

-41-

other materials, Cytek will continue to sell flow cytometry products, including its Aurora and Northern Lights products, and to misuse related documentation and other materials that infringe BD's Copyrighted Works, and will cause and continue to cause ongoing and future injury to BD by reason of that infringement.  *See*, *e.g.*, <https://cytekbio.com/pages/aurora> and <https://cytekbio.com/pages/northern-lights> (visited May 1, 2020).

### C.   Cytek's Copyright-Related Breaches of Contracts

192.    Upon information and belief, Cytek also breached BD's software license agreements for its FACSDiva and FACStation software by agreeing to the terms of those agreements and then using BD's software in a manner that violated those agreements.

193.    More particularly, and as discussed in greater detail below, upon information and belief Cytek has breached each of the following agreements: (i) the FACSDiva 6.1.3 software license agreement; (ii) the FACSDiva 7.0 software license agreement; (iii) the FACSDiva 8.0 software license agreement; and (iv) the FACStation 6.0.4 software license agreement (collectively, the "Software License Agreements").

194.    BD provides the customers for its flow cytometer products with limited and non-transferrable licenses for the software included with those products.

195.    The Software License Agreements for both BD FACSDiva 6.1.3 and 7.0, copies of which are attached hereto as Exhibits 40 and 41 respectively, state that "[e]ach sale of a stored unit of this software grants the purchaser a nontransferable, nonexclusive, personal license," and that "this software may not be duplicated, reproduced or copied in any form or by any means whatsoever, except as otherwise permitted by law."

196.    The Software License Agreement for BD FACSDiva 8.0, a copy of which is attached hereto as Exhibit 42, states, *inter alia*:

- "If you do not agree to the terms of this Agreement, you are not granted any rights whatsoever in the Software, and you will not be able to access or use the Software."

- "You shall use only (1) one copy of the Software on (1) one computer and you may make (1) one copy for back-up purposes."

- Users may not "(v) work around any technical limitations in the Software, use any tool to enable features or functionalities that are otherwise disabled in the Software, or decompile, disassemble, or otherwise reverse engineer the Software except as otherwise permitted by applicable law . . . ."

-42-

- Users may not "(vii) copy, modify, duplicate, translate, disassemble, or decompile the Software without BD's prior written consent . . . ."

- Users may not "(viii) otherwise use the Software except as expressly allowed herein . . . ."

- "You shall not cause or permit decompilation, disassembly, or reverse engineering of the Software or disclosure, copying, display, loan, publication, transfer of possession (whether by sales, exchange, gift, operation of law or otherwise) or other dissemination of the Software and related documentation, in whole or part, to any third party without the prior written consent of BD."

- "Physical media and copies of the Software, whether in diskette, tape, paper or other forms provided by BD, shall remain the property of BD, and such copies are deemed to be on loan to you during the term of the license granted hereby."

Exhibit <u>42</u>.

197.    One of the manuals for the BD FACStation 6.0.4 software, the first two pages of which are attached hereto as Exhibit <u>14</u>, states that "[e]ach sale of a stored unit of this software grants the purchaser a nontransferable, nonexclusive, personal license. This software may not be duplicated, reproduced, or copied in any form or by any means whatsoever, except as otherwise permitted by law."

198.    As evidenced by its own discovery responses and document production, Cytek possessed copies of and used both the BD FACSDiva and BD FACStation software.  *See* ¶¶ 178-179 *supra*.

199.    Upon information and belief, Cytek agreed to each of these licenses before using the BD FACSDiva and BD FACStation software, either when it (i) acquired each of these software products from BD, along with their corresponding hardware and documentation, and first opened and used the software programs, or (ii) purchased copies of and installed these software programs. Indeed, each version of the FACSDiva software at issue in this action required users to agree to the terms of their license agreements to proceed with installation of that software, as depicted below in the "clickwrap" licenses for BD FACSDiva 6.1.3, BD FACSDiva 7.0, and BD FACSDiva 8.0 respectively:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25







26     200.    Each of these licenses was supported by consideration, including the software and its

27 functionality, and BD was ready, willing, and able to perform, and did perform, its part of each of

28 those agreements, including by providing the relevant software and its functionality.

THIRD AMENDED COMPLAINT                                    CASE NO. 3:18-CV-00933-MMC

201.     Cytek breached each of these licenses—and in particular (i) breached the prohibition on "duplicat[ion], reproduc[tion] or cop[ying] in any form" set forth in  the BD FACSDiva 6.1.3 and 7.0 license agreements by copying at least one of those versions of BD FACSDiva to create the hardware and software for its own Aurora spectral flow cytometer products and their software, as set forth in paragraph 178 above; (ii) breached the prohibitions on copy[ing], modify[ing], or duplicat[ing]. . . the Software without BD's prior written consent" and "us[ing] the Software except as expressly allowed herein" set forth in Sections 1(b)(vii)-(viii) of the BD FACSDiva 8.0 license agreement by copying and modifying those versions of BD FACSDiva to create the hardware and software for its own Aurora spectral flow cytometer products and their software, as set forth in paragraph 178 above; and (iii) breached the prohibition on "duplicat[ing], reproduc[ing], or cop[ying] in any form or by any means whatsoever, except as otherwise permitted by law" set forth in the FACStation 6.0.4 license by impermissibly copying that work, as set forth in paragraph 179 above.

202.     BD has suffered harm as a result of Cytek's breach of the license agreements, including monetary injury resulting from the loss of sales of its LSR Fortessa 4L and 5L and FACSymphony A5 spectral cytometer products, as well as lost sales of their associated products and services, to Cytek's own competing flow cytometry products, including at least its Aurora and Northern Lights products (as well as their associated products and services), which Cytek could not have developed, marketed, or sold without having breached those agreements, and without having impermissibly copied and modified BD's BD FACSDiva and FACStation software to develop, market, and sell Cytek's own hardware, software, and documentation and supporting materials.

## FIRST CLAIM FOR RELIEF

**(Misappropriation/Threatened Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016)**
**(Against All Defendants)**

203.     BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

204.     BD owned and possessed confidential and proprietary information, documents, and data containing or constituting the BD Trade Secrets.  The BD Trade Secrets are the products of valuable research and development, time and effort, and investment by BD.

205.     The BD Trade Secrets are valuable products of BD's R&D.  The BD Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from the disclosure or use of that information.  The BD Trade Secrets constitute a significant knowledge base for the development of a new flow cytometer.  They would also give companies that offer cytometer repair services, upgrade services, or replacement components (like Cytek) an unfair advantage by revealing confidential information about the design of BD's cytometers.  The BD Trade Secrets, individually or in combination, could be used to create new cytometer components, entire instruments, software, or marketing strategies for those products.

206.     At all times, BD has taken reasonable and extensive measures to keep secret its trade secrets and confidential information, including the BD Trade Secrets, including but not limited to by limiting access to confidential information, requiring non-exempt employees to sign Employee Agreements, implementing employment policies (including the BD Trade Secret Policy) that require confidentiality, and reminding BD employees (including all of the Individual Defendants) of their responsibilities when logging into the BD network.

207.     The BD Trade Secrets all relate to flow cytometry products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

208.     At no time did BD consent to Defendants' taking, using, retaining, or disclosing the BD Trade Secrets for any purpose.

209.     In violation of BD's rights, the Defendants misappropriated the BD Trade Secrets in the improper and unlawful manner as alleged herein, within the meaning of the DTSA, 18 U.S.C. § 1836, by using and disclosing the BD Trade Secrets and continuing to use and disclose them to this day, after May 11, 2016, for their own economic benefit.

-46-

210.   The Individual Defendants misappropriated the BD Trade Secrets by improperly downloading files containing the BD Trade Secrets onto removable media devices, removing them from BD's premises, and taking the BD Trade Secrets with them to Cytek.  At Cytek they then, upon information and belief, disclosed, used, and continue to use them and enable others at Cytek to use them, after May 11, 2016, in violation of their duties of secrecy to BD and their duties to return BD property upon leaving BD.

211.   The Individual Defendants further misappropriated the BD Trade Secrets by improperly disclosing the BD Trade Secrets to Cytek, using the BD Trade Secrets for Cytek's benefit, and enabling their use by others at Cytek, from no later than the time each Individual Defendant began working at Cytek to no earlier than the times Cytek unveiled (1) the Athena$^{TM}$ flow cytometer in March 2017 and (2) the Aurora$^{TM}$ flow cytometer in June 2017.

212.   Cytek misappropriated the BD Trade Secrets by improperly acquiring the BD Trade Secrets from the Individual Defendants over the time period in which the Individual Defendants disclosed them, even though Cytek knew or should have known that the Individual Defendants' disclosure was in violation of the Individual Defendants' duties of secrecy and to return BD property to BD.

213.   Upon information and belief, all Defendants further misappropriated the BD Trade Secrets by improperly using the BD Trade Secrets to develop, manufacture, market, sell, maintain, service, and upgrade flow cytometry products, for Cytek's benefit and to the detriment of BD, and such improper use continues to this day.

214.   Upon information and belief, Defendants Reinin and Shook further misappropriated the BD Trade Secrets by improperly taking devices and files containing the BD Trade Secrets with them to Cytek when they left BD on dates after May 11, 2016, in violation of their Agreements, irrespective of their later use and disclosure of the BD Trade Secrets at Cytek.

215.   The Individual Defendants' misappropriation of the BD Trade Secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(C).

216.    The Individual Defendants have failed to return the removable media devices and files containing BD Trade Secrets.

217.    If the Individual Defendants' conduct is not remedied, they will continue to misappropriate, disclose, and use for their own and Cytek's benefit and to BD's detriment, the BD Trade Secrets.

218.    As the direct and proximate result of Defendants' misappropriation, BD has suffered damage within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(I) in an amount as yet unknown and, if Defendants' conduct is not stopped, BD will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.

219.    In addition, as a direct and proximate result of Defendants' misappropriation, Defendants have been unjustly enriched as a result their misappropriation of the BD Trade Secrets within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(II) in an amount as yet unknown.

220.    Because BD's remedy at law is inadequate, BD seeks, in addition to damages, injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A)(i) to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.  BD's business relies on its reputation and ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

## SECOND CLAIM FOR RELIEF

**(Aiding and Abetting the Defend Trade Secrets Act of 2016)**
**(Against All Defendants)**

221.    BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

222.    BD owned and possessed the BD Trade Secrets, which relate to flow cytometry products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce, as alleged herein.

223.    The BD Trade Secrets are not generally known or readily ascertainable through proper means, nor could they be properly acquired or duplicated by others.

-48-

224.   At all times, BD has taken reasonable and extensive efforts to keep secret its trade secrets and confidential information, including the BD Trade Secrets.

225.   The BD Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

226.   The misappropriated BD Trade Secrets are crucial to the success of the implementation, operation, and maintenance of BD's proprietary cytometry technologies, and give a decisive competitive advantage to BD and, potentially, to anyone else with access to this information.  Use of the BD Trade Secrets held by the Individual Defendants and contained in the files they misappropriated would also greatly help Cytek with its original business of service, repair, and upgrade of BD products.

227.   At no time did BD consent to Defendants' taking, using, or disclosing the BD Trade Secrets for any purpose.

228.   In violation of BD's rights, the Defendants misappropriated the BD Trade Secrets in the improper and unlawful manner as alleged herein, within the meaning of the DTSA, 18 U.S.C. § 1836, by using and disclosing the BD Trade Secrets and continuing to use and disclose them for their own economic benefit, and by enabling others at Cytek to use them.

229.   Each of the Defendants aided and abetted the misappropriation by other Defendants of the BD Trade Secrets within the meaning of the DTSA, 18 U.S.C. § 1836, to the benefit of Cytek.

230.   As the direct and proximate result of Defendants' misappropriation, and aiding and abetting of said misappropriation as aforesaid, BD has suffered damage within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(I) in an amount as yet unknown and, if Defendants' conduct is not stopped, BD will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.

231.   Defendants will continue to misappropriate, and aid and abet said misappropriation of, the BD Trade Secrets, and BD will continue to suffer irreparable injury, unless Defendants' continued aiding, abetting, and misappropriation is enjoined by this Court pursuant to 18 U.S.C. § 1836(b)(3)(A)(i).

232.     Defendants willfully and maliciously misappropriated, and aided and abetted said misappropriation of, the BD Trade Secrets within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(C).

**THIRD CLAIM FOR RELIEF**

**(Misappropriation/Threatened Misappropriation of Trade Secrets Under the California Uniform Trade Secrets) (California Civil Code § 3426, et seq.)**
**(Against All Defendants)**

233.     BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

234.     BD owned and possessed confidential and proprietary information, documents, and data containing and embodying the BD Trade Secrets.

235.     The BD Trade Secrets would also give companies that offer cytometer repair services, upgrade services, or replacement components (like Cytek) an unfair advantage by revealing confidential information about the design of BD's cytometers.

236.     At all times, BD has taken reasonable and extensive measures to keep secret its trade secrets and confidential information, including the BD Trade Secrets, including but not limited to by limiting access to confidential information, requiring employees to sign Employee Agreements, implementing employment policies, including the BD Trade Secret Policy, that require confidentiality, and reminding BD employees, including all of the Individual Defendants, of their responsibilities when logging into the BD network.

237.     The BD Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

238.     The misappropriated BD Trade Secrets are crucial to the success of the implementation, operation, and maintenance of BD's proprietary cytometry technologies, and give a decisive competitive advantage to BD and, potentially, to anyone else with access to this information.  Use of the BD Trade Secrets held by the Individual Defendants and contained in the files they misappropriated would also greatly help Cytek with its original business of service, repair, and upgrade of BD products.

239.     At no time did BD consent to Defendants' use or disclosure of the BD Trade Secrets for any purpose.

240.     In violation of BD's rights at law and under contracts, the Individual Defendants misappropriated the BD Trade Secrets by secretly downloading to external media devices before their departure from BD, by removing those devices from BD, and by using and disclosing the BD Trade Secrets for their own economic benefit.

241.     The Individual Defendants misappropriated the BD Trade Secrets by improperly downloading files containing the BD Trade Secrets onto removable media devices, removing them from BD's premises, and taking the BD Trade Secrets with them to Cytek.  At Cytek they then, upon information and belief, disclosed, used, and continue to use them, and enable others at Cytek to use them, in violation of their duties of secrecy to BD and their duties to return BD property upon leaving BD.

242.     The Individual Defendants further misappropriated the BD Trade Secrets by improperly disclosing the BD Trade Secrets to Cytek and using the BD Trade Secrets for Cytek's benefit.

243.     Cytek misappropriated the BD Trade Secrets by improperly acquiring the BD Trade Secrets from the Individual Defendants and, upon information and belief, using that information to develop its own flow cytometry products, even though Cytek knew or should have known that the Individual Defendants' disclosure was in violation of the Individual Defendants' duties of secrecy and to return BD property to BD.

244.     Upon information and belief, all Defendants further misappropriated the BD Trade Secrets by improperly using the BD Trade Secrets to develop, manufacture, market, sell, maintain, service, and upgrade flow cytometry products, for Cytek's benefit and to the detriment of BD, and such improper use continues to this day.

245.     Upon information and belief, all Individual Defendants further misappropriated the BD Trade Secrets by improperly taking devices and files containing the BD Trade Secrets with them when they left BD, in violation of the Agreement, irrespective of their later use and disclosure of the BD Trade Secrets at Cytek.

246.    Defendants knew or should have known under the circumstances that the information misappropriated by Defendants was trade secret information.

247.    The Individual Defendants have failed to return the removable media devices and files containing BD Trade Secrets.

248.    As a direct and proximate result of Defendants' misappropriation as aforesaid, BD is threatened with injury and has been injured in an amount in excess of the jurisdictional minimum of this Court and that will be proven at trial.  BD has also incurred, and will continue to incur, additional damages, costs and expenses, including attorney's fees, as a result of Defendants' misappropriation.

249.    As a further proximate result of the misappropriation and use of the BD Trade Secrets, Defendants were unjustly enriched.

250.    The aforementioned acts of Defendants were willful, malicious, and fraudulent.  BD is therefore entitled to exemplary damages under California Civil Code § 3426.3(c).

251.    Defendants' conduct constitutes transgressions of a continuing nature for which BD has no adequate remedy at law.  Unless and until enjoined and restrained by order of this Court, Defendants will continue to retain and use BD's trade secret information to enrich themselves and divert business from BD.  Pursuant to California Civil Code § 3426.2, BD is entitled to an injunction against the misappropriation and continued threatened misappropriation of trade secrets as alleged herein and further asks the Court to restrain Defendants from using all trade secret information misappropriated from BD and to return all trade secret information to BD.

252.    Pursuant to California Civil Code § 3426.4 and related law, BD is entitled to an award of attorney's fees for Defendants' misappropriation of trade secrets.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract)
### (Against Riley, Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook)

253.    BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

254.    The Agreement, which Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook each knowingly and willingly entered into, is a valid and enforceable contract.  Additionally, each

Individual Defendant executed multiple contracts with BD in which they acknowledged their duties of confidentiality and agreed to protect BD's trade secrets.

255.   Riley had a duty to avoid disclosing or misusing BD's trade secrets and confidential information.   Riley and BD entered into an express or implied-in-fact contractual employment relationship, in which Riley agreed to BD's restrictions on such information, including the BD Trade Secrets.   Additionally, Riley executed multiple contracts with BD in which he acknowledged his duties of confidentiality and agreed to protect BD's trade secrets.

256.   BD at all times performed its contractual duties under the Agreement and any other implied contract formed through its employment of Riley, Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook.

257.   During their employment with BD, Riley, Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook had access to and were exposed to BD confidential, proprietary, and trade secret information.

258.   The downloading and taking from BD's premises of the BD Trade Secrets by Riley, Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook violated their obligation in the Agreement to return all of BD's property at termination, regardless of the format of such property, and irrespective of their later use and disclosure to Cytek of the BD Trade Secrets.

259.   The disclosure to Cytek, and use while employed by Cytek, of the BD Trade Secrets by Riley, Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook violated their obligation in the Agreement not to disclose or use BD confidential information outside the scope of their employment, either during or after their employment at BD.

260.   The failure to assign to BD any innovations developed based on BD confidential information within one year after employment at BD by Riley, Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook violated their obligation in the Agreement to assign any and all such innovations to BD.

261.   Defendant Yan secretly filed, while still employed by BD, a patent application on subject matter developed while working for BD and used that patent application to promote his own separate business interests to investors.   This was a conflict of interest and further violated Yan's

1  obligations to assign innovations to BD and to not disclose or use BD confidential information
2  outside the scope of his employment at BD.

3  262.    As a direct, foreseeable, and proximate result of the breach of their contracts by Riley,
4  Yan, Vrane, Zhang, Gong, Zhong, Jaimes, Reinin, and Shook, BD has been and/or will be damaged
5  in that it has lost or will lose revenue that it would have received but for their breach of those
6  contracts, and BD has suffered or will suffer harm due to their breach.

### FIFTH CLAIM FOR RELIEF

**(Breach of Contract)**
**(Against Cytek)**

263.    BD repeats and realleges each and every allegation in the foregoing paragraphs as if
fully set forth herein.

264.    BD provides customers for its flow cytometer products limited and non-transferrable
licenses to use BD's software.

265.    Upon information and belief, Cytek entered into and subsequently breached certain
Software License Agreements, including by, at a minimum, making unauthorized copies of those
works and using those works beyond the scope of their respective software license agreements in
connection with developing and promoting Cytek's own products.

266.    More particularly, and as set forth in greater detail in paragraphs 166-202 above,
upon information and belief, Cytek entered into Software License Agreements with BD relating to
each of BD's FACSDiva 6.1.3, 7.0, and 8.0 software works, along with BD's FACStation 6.0.4
software work; each of those agreements was supported by consideration; BD was ready, willing,
and able to perform its part of each of those agreements; Cytek breached each of those agreements;
and BD suffered harm as a result.

267.    BD is entitled to compensatory damages for these breaches.

### SIXTH CLAIM FOR RELIEF

**(Violation of California Unfair Competition Law)**
**(Against Defendant Yan)**

1  268.   BD repeats and realleges each and every allegation in the foregoing paragraphs as if

2  fully set forth herein.

3  269.   Upon information and belief, Defendant Yan engaged in unlawful business practices

4  and unfair competition, prohibited under California Business and Professions Code Sections 17200

5  *et seq.*, by secretly filing a patent application—which he later suppressed—in his own name while

6  still employed by BD, on subject matter that he developed while working at BD, and by

7  communicating with potential investors about the same, including a representative of Fidelity Asia,

8  in violation of his contractual obligations to BD.

9  270.   These acts by Defendant Yan constitute unlawful business practices and unfair

10 competition prohibited under California Business and Professions Code Sections 17200 *et seq.*

11 271.   Defendant Yan has benefited from these acts in the form of unfair advantages in

12 developing, producing, and selling flow cytometers, as evidenced by Cytek's release of two

13 competing flow cytometer products.

14 272.   As a result of such acts, BD has suffered damage in an amount as yet unknown, and,

15 if Defendant Yan's conduct is not stopped, BD will continue to suffer irreparable injury and

16 significant damages, in an amount to be proven at trial.

17 273.   As an additional result of such acts, BD has suffered, and will continue to suffer,

18 irreparable harm by Defendant Yan's unlawful practices and unfair competition, including but not

19 limited to its business reputation, good will, and stature, in the business community and with its

20 customers, for which there is no adequate remedy at law, thereby justifying injunctive relief.

21 274.   Until relief is granted to BD, BD will be harmed and Defendant Yan will be unjustly

22 enriched, which unjust enrichment should be disgorged pursuant to allowable remedies under

23 California Business and Professions Code Sections 17200 *et seq.*

24 **SEVENTH CLAIM FOR RELIEF**

25 **(Copyright Infringement)**
26 **(Against Cytek)**

27 275.   BD repeats and realleges each and every allegation in the foregoing paragraphs as if

28 fully set forth herein.

276.     BD owns all U.S. copyright rights in the BD Copyrighted Works, and owns valid and subsisting U.S. registrations for those works, namely, U.S. Reg. No. TX 8-760-618 for FACSDiva 6.1.3; Reg. No. TX 8-760-635 for FACSDiva 7.0; Reg. No. TX 8-760-661 for FACSDiva 8.0; Reg. No. TX 8-784-370 for FACStation 6.0.4; Reg. No. TX 8-753-485 for the BD FACSVerse System User's Guide; Reg. No. TX 8-753-555 for the BD FACScan System Instructional Module; Reg. No. TX 8-760-376 for the 2004 BD FACSCanto II Instructions for Use; Reg. No. TX 8-754-888 for the 2005 BD FACSCanto II Instructions for Use; Reg. No. TX 8-757-768 for the 2006 BD FACSCanto II Instructions for Use; and Reg. No. TX 8-787-941 for the technical specifications for BD's LSRFortessa X-20 Cell Analyzer. *See* Exhibits 2-3 and 10.

277.     As set forth in greater detail in paragraphs 166-191 above, Cytek has engaged in, and upon information and belief is continuing to engage in, the unauthorized copying, reproduction, and distribution of the BD Copyrighted Works, and the unauthorized preparation, reproduction, and distribution of derivative works based on the BD Copyrighted Works.

278.     Cytek's acts and conduct complained of herein constitute copyright infringement in violation of 17 U.S.C. § 501 *et seq*.

279.     On information and belief, Cytek's acts of infringement were willful, deliberate, and in bad faith.

280.     Cytek's acts and conduct have been substantially injurious and detrimental to BD, its copyright rights, and its business.

281.     BD has no adequate remedy at law.

282.     BD is entitled to injunctive relief, its actual damages and Cytek's profits, or, at BD's election, and where and to the extent appropriate, statutory damages, as well as its costs and reasonable attorney fees, under 17 U.S.C. §§ 502, 504, and 505.

**WHEREFORE**, BD prays for judgment against Defendants as follows:

1.     A permanent injunction against Defendants enjoining them from using BD's confidential and proprietary information, directing return of all of BD's property, and enjoining the

（

sale of any cytometer product that incorporates or was otherwise derived from BD's confidential information;

2. A permanent injunction against Defendants directing them to assign to BD all innovations derived from and/or related to BD confidential information and/or BD Trade Secrets developed within a year of leaving BD, in accordance with the Agreement.

3. A permanent injunction against Defendants enjoining them from inducing BD employees to breach their contractual obligations with BD.

4. An order compelling Defendants to have an independent forensic expert review Defendants' computer systems, including any and all e-mail or cloud storage accounts, and identify and delete any BD confidential information;

5. A permanent injunction enjoining Cytek and its parents, subsidiaries, affiliates, principals, employees, agents, officers, directors, shareholders, attorneys, representatives, successors, and assigns, and all persons in active concert and participation with them or any of them, from using or continuing to use the BD Copyrighted Works, any works derived from the BD Copyrighted Works, or any other copyrighted BD works;

6. That Cytek be directed to file with the Court and serve upon BD's counsel within thirty (30) days of entry of such judgment a report in writing and under oath setting forth in detail the manner and form in which Cytek has complied with Sections (1)-(5) above;

7. All actual and/or compensatory damages pled and proved, or, at BD's option and to the extent permitted by law, statutory damages;

8. Cytek's profits;

9. Disgorgement of any benefit, unjust enrichment, or monetary gains stemming from misuse of the BD Trade Secrets.

10. BD's lost profits from any lost sales or revenue resulting from misuse of the BD Trade Secrets.

11. Attorneys' fees and costs in the suit herein, to the extent permitted by law;

12. Punitive damages in favor of BD and against Defendants;

13. Pre-judgment and post-judgment interest; and

THIRD AMENDED COMPLAINT                                     CASE NO. 3:18-cv-00933-MMC

14. Such other and further relief as to this Court may seem just and proper.

Respectfully submitted,

Date: May 6, 2020

By: */s/ James R. Batchelder*
**ROPES & GRAY LLP**
James R. Batchelder (CSB # 136347)
David S. Chun (CSB # 315958)
1900 University Ave. Sixth Floor
East Palo Alto, CA 94303–2284
james.batchelder@ropesgray.com
david.chun@ropesgray.com
(650) 617–4000

Peter M. Brody (*pro hac vice*)
2099 Pennsylvania Ave. NW
Washington, DC 20006–6807
Tel: (202) 508–4600
Fax: (202) 508–4650
peter.brody@ropesgray.com

Mark S. Popofsky (CSB #175476)
Anne Johnson Palmer (CSB #302235)
Three Embarcadero Center
San Francisco, CA 94111–4006
mark.popofsky@ropesgray.com
anne.johnsonpalmer@ropesgray.com
(415) 315–6300

*Attorneys for Plaintiff*
*BECTON, DICKINSON AND COMPANY*

THIRD AMENDED COMPLAINT                        CASE NO. 3:18-cv-00933-MMC